213 N.J. Super. 324 (1985)
517 A.2d 457
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARCELLINO LOPEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 16, 1985.
Decided July 26, 1985.
*326 Before Judges DREIER and DEIGHAN.
Thomas S. Smith, Acting Public Defender of New Jersey, attorney for appellant (David B. Bole, Designated Counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (Jeffrey W. Coghlan, Deputy Attorney General, of counsel and on the letter brief).
PER CURIAM.
Defendant Marcellino Lopez was indicted for first degree murder in violation of N.J.S.A. 2C:11-3 (count one); third degree unlawful possession of a handgun in violation of N.J.S.A. 2C:39-5b (count two), and second degree possession of a handgun for an unlawful purpose in violation of N.J.S.A. 2C:39-4a (count three). He was found not guilty of the murder indictment but guilty of the unlawful possession of a handgun and possession of a handgun for an unlawful purpose. On count three he was sentenced to a term of ten years with a five year parole ineligibility. Count two, possession of the handgun was merged with count three and dismissed. A $250 Violent Crimes Compensation Board penalty was imposed.
Apparently, some time prior to May 9, 1982 someone told Luis Matias that defendant, a long time acquaintance of Matias, was planning to steal or rob something from him. Since then the two periodically argued over this accusation. Their most recent argument was a few days prior to May 9, 1982. On this latter date, near the intersection of Mt. Prospect Avenue and Second Avenue in Newark, defendant was approached by Matias who began arguing with defendant. They exchanged harsh words and after the argument, defendant went home, got his revolver and returned to Mt. Prospect and Second Avenues.
In the meantime, Matias got into his car and picked up a friend, Bienvenido Rivera. At Matias' request, Rivera drove him back to Mt. Prospect and Second Avenue. Upon arriving *327 they saw defendant crossing the street in front of their car. Matias, who had a revolver in his possession, jumped out of the car and again began arguing with defendant. Rivera, who remained in the car, then heard shots and saw defendant fall to the ground after which he saw Matias fall while attempting to get away. Defendant, who was obviously wounded, got up and, as testified to by Rivera, walked up to Matias and from close range shot Matias twice, killing him. Defendant then sat on the ground and was subsequently arrested.
Defendant claimed self defense to the murder charge. At trial he testified that he obtained the gun solely for protection. He further stated that at the scene of the crime Matias walked up to him, told him that he was going to kill him, then Matias shot him twice knocking him to the ground. Defendant stated that Matias then backed away, saw that defendant was still alive and came back to him. Defendant, while still on the ground, then fired three shots, killing Matias.
On appeal, the defendant contends that:

 POINT I (A) THE JURY VERDICT ON COUNT III OF THE
 INDICTMENT WAS LOGICALLY UNSOUND,
 INCONSISTENT AND UNSUPPORTED AS A MATTER OF
 LAW.
 POINT I (B) THE JURY VERDICT WAS NOT SUPPORTED BY AND
 WAS OTHERWISE AGAINST THE WEIGHT OF THE
 SUFFICIENT CREDIBLE EVIDENCE IN THE RECORD.
 POINT II THE TRIAL COURT IMPROPERLY INSTRUCTED THE
 JURY ON THE CHARGE OF POSSESSION OF A
 FIREARM WITH UNLAWFUL PURPOSE WHICH
 CONSTITUTES REVERSIBLE ERROR AND WHICH
 MANDATES A JUDGMENT OF ACQUITTAL ON SUCH
 COUNTS.

In defense to the murder count, defendant pled self defense pursuant to N.J.S.A. 2C:3-4a which provides: "... the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." Defendant points to N.J.S.A. 2C:3-4b.(2), which provides:

*328 The use of deadly force is not justifiable unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily injury.
He then concludes:
In acquitting the defendant of the charges pursuant to Count I of the Indictment the Jury obviously concluded that the defendant was justified in using deadly force in an act of self defense. It is submitted, therefore, that the Jury's verdict on Count III when analyzed with their verdict on Count I is both inconsistent and erroneous.
In other words, he argues that the acquittal under the murder charge necessarily precludes a finding that the defendant had a firearm in his possession for unlawful purposes under count three. The State argues that first there is no inconsistently and second, that in any event, inconsistent verdicts are permissible.
The State points out that defendant went home, retrieved his revolver and returned to the scene of his argument with Matias. The State concludes that defendant admitted that he did not have to go back to the scene of the argument with the gun, and that his return to the scene of the argument with a gun was for unlawful purpose.
Be that as it may, inconsistent verdicts do not vitiate an otherwise reasonable verdict. State v. Peterson, 181 N.J. Super. 261, 267 (App.Div. 1981), certif. den. 89 N.J. 413 (1982). Inconsistent verdicts accruing to the defendant's benefit are acceptable. See State v. Ingenito, 87 N.J. 204, 211-212 (1981). "Unless inconsistent verdicts preclude the establishment of an element of the offense ... they do not affect the validity of a conviction that is supported by a sufficient quantum of evidence." State v. Peterson, supra, 181 N.J. Super. at 267. In State v. Roller, 29 N.J. 339, 348-349 (1959), our Supreme Court adopted the rule set out in Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), that each count of an indictment is regarded as a separate indictment so that inconsistent verdicts do not necessarily require reversal. State v. Still, 112 N.J. Super. 368, 373 (App.Div. 1970), certif. den. 57 *329 N.J. 600 (1971). See also United States v. Powell, 469 U.S. 57, 64-66, 105 S.Ct. 471, 476-478, 83 L.Ed.2d 461, 468-469 (1984).
It is necessary then to examine the elements of murder. Criminal homicide constitutes murder when the actor purposely causes death or serious bodily injury resulting in death, N.J.S.A. 2C:11-3a.(1), or knowingly causes death or seriously bodily injury resulting in death. N.J.S.A. 2C:11-3a.(2). In exonerating defendant from the charge of murder, the jury did not necessarily find that defendant did not purposely or knowingly cause the death of Matias. Rather, under self defense the jury found that defendant was justified because he "reasonably believe[d] that such force [was] immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the ... occasion." N.J.S.A. 2C:3-4a.
Under count three of the indictment, defendant was found guilty of possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a., which provides:
Any person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the second degree.
Under this statute the State must prove four elements: (1) that defendant had a firearm; (2) that defendant possessed it; (3) that he had a purpose to use it against a person, and (4) it was to be used unlawfully. There is no question concerning the first three elements. The fourth element, "unlawfully" is not defined in the Code relative to this Chapter. The word "unlawfully" negates all legal cause of excuse, i.e., without legal excuse. State v. Orecchio, 27 N.J. Super. 484, 489 (App.Div. 1953), aff'd 16 N.J. 125 (1954). The fact that defendant was exonerated from the murder charge does not convert into a possession of the handgun.
While the use of the gun for self defense may have been "lawful," returning to Mt. Prospect and Second Avenue with the gun together with knowledge that there probably would be a confrontation with deadly force, is not encompassed in the permissible use of such force in the context of self defense. *330 Colloquially, defendant was "out looking for trouble" or a "shoot out at O.K. Corral," western style. It was the earlier possession with the intent to use the weapon against the victim that was unlawful. See State v. Truglia, 97 N.J. 513, 521 (1984) (possession with unlawful purpose, N.J.S.A. 2C:39-4a. occurred when defendant chased the victim with gun in hand before assaulting by pointing and discharging weapon, N.J.S.A. 2C:12-1b.(1)). Cf. Commonwealth v. Watson, 494 Pa. 467, 474, 431 A.2d 949, 953 (Sup.Ct. 1981) (no criminal intent from possession of gun used in self defense when defendant carries weapon solely for protection).
In view of the foregoing we find that there is no inconsistency in the verdict. Further, there was no error by the trial judge, as contended by the defendant, in charging the jury on the count for knowingly and unlawfully possessing a handgun with the purpose of using it unlawfully against another in violation of N.J.S.A. 2C:39-4a.
Nor is there any merit to defendant's contention that the verdict was against the weight of the evidence. In the first place defendant failed to apply to the trial judge for a new trial, R. 3:20-1; State v. Perry, 128 N.J. Super. 188, 190 (App.Div. 1973), aff'd 65 N.J. 45 (1974), therefore this issue is not cognizable before us unless "it clearly appeared that there was a miscarriage of justice under the law." R. 2:10-1; State v. McNair, 60 N.J. 8, 9-10 (1972). However, aside from the procedural deficiency, substantively, there is no merit to defendant's contention.
In State v. Brown, 80 N.J. 587 (1979), the Supreme Court addressed the issue of sufficiency of evidence to support a motion for acquittal and a motion for a new trial. The Court noted the relevant standard was whether "viewing the State's evidence in the entirety ... and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable *331 doubt." Id. at 591, quoting State v. Reyes, 50 N.J. 454, 459 (1967).
Given the factual sequence as reviewed above there has been no "manifest denial of justice under the law." State v. Carter, 91 N.J. 86, 98 (1982).
Affirmed.