234 N.J. Super. 364 (1989)
560 A.2d 1267
CAROLINE THOMAS, AN INFANT BY HER GUARDIAN AD LITEM, ROBERT THOMAS, AND ROBERT THOMAS, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
STEPHEN ROMEIS,[1] DEFENDANT-RESPONDENT, AND ROBERT F. BERGERON, MILDRED L. BERGERON, RONALD ROBERTS, SUSAN UFER, NANCY UFER, TOWNSHIP OF MT. OLIVE, TOWNSHIP OF MT. OLIVE DEPARTMENT OF PUBLIC WORKS, JOHN DOE (FICTITIOUS NAME), RICHARD ROE (FICTITIOUS NAME), TOWNSHIP OF MT. OLIVE POLICE DEPARTMENT, STATE OF NEW JERSEY, JACK SMITH (FICTITIOUS NAME), ROBERT BROWN (FICTITIOUS NAME), COUNTY OF MORRIS, MIKE BLACK (FICTITIOUS NAME), DAVID JONES (FICTITIOUS NAME), ABC CORPORATION (FICTITIOUS NAME), XYZ CORPORATION (FICTITIOUS NAME), HARRY DAVIS (FICTITIOUS NAME), PETER GREEN (FICTITIOUS NAME), DEFENDANTS.
No. A-219-88T1.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1989.
Decided July 13, 1989.
*365 Before Judges LONG, MUIR, Jr., and KEEFE.
Carol L. Forte argued the cause for the appellants (Blume, Vazquez, Goldfaden, Berkowitz, Oliveras & Donnelly, attorneys, Carol L. Forte, on the brief).
Donald S. Mc Cord, Jr. argued the cause for the respondent (O'Donnell, Mc Cord & Leslie, attorneys; Donald S. Mc Cord, on the brief).
The opinion of the court was delivered by KEEFE, J.S.C. (temporarily assigned).
The principle issue to be decided on this appeal is whether the trial judge erred when he instructed the jury that a social host is not liable for the negligent acts of his minor guest who becomes intoxicated and causes injury to a third person, unless the jury finds that the social host provided alcoholic beverages *366 to the minor after a point in time when the minor was visibly intoxicated. We conclude that he did not err and affirm the judgment under review.[2]
The automobile accident giving rise to this litigation occurred in the early morning hours of August 21, 1985. Plaintiff Caroline Thomas was a passenger in a motor vehicle operated by defendant Susan Ufer. Ufer was issued a summons for driving while under the influence of an alcoholic beverage and pled guilty to that charge.
Prior to the accident, Thomas and Ufer were guests at the home of defendants Robert and Mildred Bergeron. Defendant Stephen Romeihs is the son of Mrs. Bergeron by a former marriage. Romeihs was the host of the social gathering on the evening in question while the Bergerons were away on vacation.
Ufer, Thomas and Romeihs worked together at an establishment known as the Publick House. As a result of various conversations between them and because Romeihs knew that Thomas had an interest in his friend, defendant Ronald Roberts, the trio made arrangements to meet Roberts at a party in Budd Lake. The four, who were all under the age of twenty-one, stayed at the party for a short period of time and then left to go to the Bergerons' home.
What occurred thereafter was hotly disputed. Roberts and Romeihs testified that the girls brought two six packs of beer, which they consumed during a game of "quarters." "Quarters" is a game wherein the participants attempt to flip a coin into a glass. The player who is successful in that effort then chooses another player to drink. Romeihs claimed that he served no beer to either Thomas or Ufer. After the game was over, Romeihs admitted that he made three "iced teas," one for *367 him, one for Roberts and a third one. He said that Ufer did not consume any iced tea, except perhaps a taste of Romeihs' drink. Romeihs also testified that Ufer only had one or two beers during the quarters game and did not continue drinking after the game. He said that he and Ufer watched a movie and talked until Ufer decided to leave, at which time he said Ufer "gave me no reason to think she was intoxicated."
Thomas' testimony was quite different. She said that Romeihs supplied the liquor and all of them drank "iced teas." She said that she became drunk, was staggering and had to be helped to the car where she fell asleep. Once intoxicated, she claimed not to be in a position to evaluate the intoxication of any of the other three people. Both Romeihs and Roberts agreed that Thomas was drunk when the girls left.
Ufer testified that she saw Romeihs get beer out of the refrigerator and that he supplied the alcoholic beverages for the drinking game. This included liquor which he obtained from a liquor cabinet. Ufer said that, when Romeihs won at "Quarters," he chose her to drink and that her glass was filled a few times. She also testified that she continued to drink after the game had concluded. She said that she became intoxicated towards the end of the night and that Romeihs continued to serve her drinks even after she felt the effects of the alcohol. She said that she was feeling "tipsy and giddy" while she was still in the house and was staggering.
Romeihs denied that anyone was picking on Ufer to drink because they knew she was driving. He claims that she stopped drinking on her own. Ufer admitted that she told the investigating police officer that she had only consumed three or four beers and maintained on cross-examination that she had told the truth to the police. The police officer testified that Ufer told him that she consumed three or four beers but said nothing about consuming mixed drinks. The officer further testified that the accident was reported at 3:22 a.m. and that *368 Ufer claimed that she started drinking at about 1:00 or 1:30 a.m.
Romeihs testified that when he visited Ufer in the hospital, Ufer told him that she "didn't feel like she was drunk or intoxicated at all." However, Ufer testified that she could not remember making any such statement. In answers to interrogatories, Thomas related a conversation with Ufer that was similar in nature. Thomas said: "I had a conversation with defendant Susan Ufer who told me that she was really sorry. On a subsequent occasion she told me that, `I swore I didn't think I was drunk and that I was okay to drive.'"
Thus, the evidence was in sharp dispute. On the one hand, Thomas and Ufer contended that Romeihs supplied the alcoholic beverages and that both were visibly intoxicated while Romeihs supplied drinks. Romeihs and Roberts, on the other hand, testified that, except for the three ice teas, all of the beer was provided by Thomas and Ufer. Further, Romeihs contended that Ufer had not appeared to be visibly intoxicated, although Thomas did.
Summary judgment was granted in favor of the Bergerons and the public entity defendants. Plaintiffs settled with all other parties, except Romeihs, at the close of the proofs. However, because Romeihs had a cross-claim against Ufer, Ufer's negligence was still an issue because of the need to allocate comparative fault. Rogers v. Spady, 147 N.J. Super. 274, 277 (App.Div. 1977). The trial judge entered a directed verdict of negligence against Ufer, concluding that reasonable minds could not differ as to her negligence. However, he determined that her percentage of fault was for the jury to decide.
As to the liability of Romeihs, the judge instructed the jury that:
"the law says that a host who serves liquor to a guest knowing both that the guest is intoxicated and will thereafter be operating a motor vehicle ... is liable for injuries inflicted on a third party as a result of the negligent operation of *369 the motor vehicle by the guest when such negligence is caused by the intoxication.
Now, the law is that you should focus on the time that the alcohol is served. In this case, you've heard the evidence concerning when the alcohol was served to the defendant Susan Ufer. And that's what you must focus on because the law says that there may be liability on the social host where the social host directly serves the guest and continues to do so even after the guest is visibly intoxicated.
So you now know the liability arises from the fact that the host has control of the liquor supply and that it is the time that the liquor is served that is the important time for you to focus on, and you must, you are to determine whether at that time the host knew that the guest was visibly intoxicated  was intoxicated, and he has to know visibly.... Was the defendant Susan Ufer visibly intoxicated at the time that Mr. Rommeihs served her. And, of course, when we say visibly, it has to be visible to Mr. Rommeihs, not to someone else because it is his liability that we are determining here.
The jury returned a verdict finding that Romeihs was not negligent. They further found that Thomas was negligent and that her negligence constituted 35% of the total responsibility, while Ufer was 65% negligent. Plaintiffs did not move for a new trial. R. 4:49-1. Thus, under R. 2:10-1, plaintiffs can not and do not herein challenge the verdict in Romeihs' favor as being against the weight of the evidence.
Rather, plaintiffs contend on appeal that the trial judge should have instructed the jury to find Romeihs liable if it found he knowingly provided alcohol to a minor. They claim that Romeihs had a duty to abstain from serving any alcohol to either Thomas or Ufer, and that he breached that duty with the first drink served. Plaintiffs contend that Ufer's degree of intoxication was irrelevant to the determination of Rommeihs' negligence. They concede that there are no cases on point in this State but argue that such a determination "would be the next logical step in furtherance of this State's long established policy against the consumption of alcohol by minors." Thus, plaintiffs contend that service of alcohol to a minor leading to the minor's intoxication is all that is necessary to establish liability against a social host. Plaintiffs requested such a charge to be given, but the trial judge refused relying on Kelly v. Gwinnell, 96 N.J. 538 (1984).
*370 Romeihs contends that we need not reach the question raised by Thomas on appeal. He argues that it is obvious from the verdict that the jury found Romeihs did not provide the alcoholic beverages which Thomas and Ufer consumed and thus was not negligent. He relies upon two questions presented by the jury during its deliberations. While questions from a jury may shed some light on its thought process, such questions give a reviewing court no confidence that the ultimate verdict was dependent upon the answers to those questions. For all we know, the questions presented by the jury to the trial judge reflected the thought process of one or two jurors. We cannot tell from the verdict, in light of the manner in which the questions were asked, whether the jury found that Romeihs was not negligent because he did not provide the alcoholic beverages, or whether it found that he did not provide the drinks after a point in time when Ufer became visibly intoxicated. Thus, we conclude that the issue must be addressed directly.
We note at the outset of our analysis that both Thomas and Ufer were 17 years of age at the time of the accident and that Romeihs was 20 years of age. Thus, neither Thomas, Ufer nor Romeihs had the "right to purchase and consume alcoholic beverages" on the date in question. N.J.S.A. 9:17B-1b. However, while Romeihs was a minor for the purpose of purchasing alcoholic beverages, he was, nonetheless, an adult with respect to "basic civil and contractual rights and obligations," including the right to "sue, be sued and defend civil actions...." N.J.S.A. 9:17B-1a. Specifically, persons who have obtained the age of 18 years are held to adult responsibility in tort. Gross v. Allen, 70 N.J. 442, 449 (1976). Thus, although Romeihs suggests that we should analyze plaintiffs' argument in terms of one minor serving another minor an intoxicating beverage, we do not believe that is a sound beginning point.
Consequently, we look to the decisional law of our State to determine extant principles of law applicable to a situation in *371 which an adult social host has allegedly served liquor to a minor. The only reported case that we have found addressing liability in that context is Linn v. Rand, 140 N.J. Super. 212 (App.Div. 1976). In that case Linn, a pedestrian, was injured when struck by a car driven by Rand. Linn alleged that Rand was intoxicated at the time of the accident and that Rand's intoxication caused her to be negligent. Linn contended that defendant Nacnodovitz was negligent because he "allowed the defendant, Lucy Rand to consume quanities [sic] of alcohol at his residence and further allowed her to drive on the highway of the State of New Jersey in an unsober condition." Id. at 214. Nacnodovitz successfully moved for summary judgment, contending that he had no duty to Linn. The record on appeal was sparse. It revealed that Rand was a minor but did not disclose her exact age, "whether she was licensed to drive a car, the amount of alcohol furnished by Nacnodovitz to Rand or his knowledge of her physical condition when she left his home." The opinion stated the issue in this manner:
[W]hether a person (not the holder of a liquor license), who furnishes excessive amounts of intoxicating liquors to a minor on a social occasion, may be held liable for the intoxicated minor's negligent acts which caused injury to an innocent third party. [Id. at 216].
Extending the liability theory first announced in Rappaport v. Nichols, 31 N.J. 188 (1959) to a social host setting for the first time, we stated the applicable rule to be that:
[A] social host who serves excessive amounts of alcoholic beverages to a visibly intoxicated minor, knowing the minor was about to drive a car on the public highways, could reasonably foresee or anticipate an accident or injury as a reasonably foreseeable consequence of his negligence in serving the minor. [Linn, 140 N.J. Super. at 219].
Eight years later in the landmark case of Kelly v. Gwinnel, supra, our Supreme Court had occasion, for the first time, to extend the principle of host liability enunciated in the Linn case to an adult social host who served alcoholic beverages to an adult social guest. The Court traced the development of tort liability in this field and observed that the Linn case was a "significant step" in the decisional law of this State. Kelly, 96 N.J. at 546. The Court said:

*372 We now approve Linn with its extension of this liability to social hosts. In expanding liability, Linn followed the rationale of Rappaport that the duty involved is a common law duty, not one arising from the statute and regulation prohibiting sales of liquor to a minor, neither of which applies to a social host. [Id. at 547].
Summarizing our holding in Linn v. Rand the Supreme Court stated the rule to be that:
[A] social host who serves liquor to a visibly intoxicated minor, knowing the minor will thereafter drive, may be held liable for the injuries inflicted on a third party as a result of the subsequent drunken driving of the minor. [Id. at 546].
Plaintiffs argue in their brief that "the Linn decision does not specifically state the age of the guests, nor specifically state whether the minor need be visibly intoxicated when served,...." They rely upon a passage from the Linn case which said that, on remand, the plaintiff should be permitted to prove that the host "nevertheless served her alcoholic beverages to the degree that she was unfit to drive, ...." Linn, 140 N.J. Super. at 217. Plaintiffs contend that, "[w]hile some have read [this passage] as requiring that the minor be visibly intoxicated, it makes more sense to conclude that it is the proximate cause element in the formula  that is, that the alcohol negligently served her is what made her unfit to drive." However, as stated earlier in this opinion, we concluded our opinion in Linn by stating that social host liability was premised on proof that the minor was served while visibly intoxicated. More importantly, the Supreme Court has interpreted our holding in the same manner. Kelly, 96 N.J. at 546-547.
Finally, plaintiffs rely upon cases from other jurisdictions which have held that social hosts are negligent if they simply provide or serve alcohol to minors. Macleary v. Hines, 817 F.2d 1081 (3rd Cir.1987); Mitseff v. Wheeler, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988); and Koback v. Crook, 123 Wis.2d 259, 366 N.W.2d 857 (1985). However, in each case relied upon by plaintiffs the standard by which the social host's conduct was measured was established by a statutory duty found in the criminal law of that jurisdiction. For example, in Macleary v. *373 Hines, the Federal Court, interpreting Pennsylvania law, relied upon the case of Congini by Congini v. Portersville Valve Co., 504 Pa. 157, 470 A.2d 515 (1983). Congini established liability in reliance on two sections of the Pennsylvania Crimes Code in a situation where an adult host knowingly served intoxicants to a minor Under one section of the Code, a person less than 20 years of age commits a summary offense if he consumes any "alcohol, liquor or malt or brewed beverages." 18 Pa. C.S. § 6308. Under another section of the Code, an adult who furnishes such beverages to a minor is liable as an accomplice to the same extent as the minor. 18 Pa. C.S. § 306. The Congini court adopted the legislative standard as a standard of conduct applicable to tort liability. Id. 470 A.2d at 517. See, Restatement of Torts, 2d. § 286. The same analysis was followed by the Supreme Court of Ohio in Mitseff v. Wheeler, and by the Supreme Court of Wisconsin in Koback v. Crook.
A review of the statutory law existing on the date of this accident is appropriate. N.J.S.A. 9:17B-1 extended to persons 21 years of age and older the right to "purchase and consume alcoholic beverages." N.J.S.A. 2C:33-15 made it a disorderly persons offense for someone under the age of 21 to knowingly possess or consume "any alcoholic beverage in any school, public conveyance, public place, or place of public assembly, or motor vehicle, ...." N.J.S.A. 33:1-81 made it a disorderly persons offense for any person under the legal age to enter a licensed premises for the purpose of purchasing or being served any alcoholic beverage or to consume any alcoholic beverage on those premises, or to misrepresent or misstate his age for the purpose of inducing any employee of the licensee to sell or deliver alcoholic beverages to him. As far as the obligation of third persons to minors is concerned, N.J.S.A. 33:1-77 made it a disorderly persons offense for "[a]nyone who sells an alcoholic beverage to a person under the legal age for purchasing alcoholic beverages...." (emphasis added). Thus, no legislation in effect on the date of the subject accident prohibited Romeihs' conduct.
*374 N.J.S.A. 2C:33-17 became effective on August 28, 1985, one week after the subject accident. It provides in part that, "[a]nyone who purposely or knowingly offers or serves or makes available an alcoholic beverage to a person under the legal age for consuming alcoholic beverages or entices that person to drink an alcoholic beverage is a disorderly person." In determining whether a statute should be applied to conduct occurring before its effective date, an inquiry into legislative intent is the polestar. State, Dept. of Environ. Protection v. Ventron Corp., 94 N.J. 473, 498 (1983). Making the statute effective on a date certain, as in this case, rather than on the date it was signed into law, is an indication that only prospective effect was intended. 2 Sutherland, Statutory Construction § 41.04 (4th Ed). In addition, because the legislation was intended to impose criminal consequences on conduct, it was most likely the Legislature's intent to apply the statute prospectively to avoid a constitutional challenge as ex post facto legislation. Id. at § 41.03. See also, Ventron, 94 N.J. at 498-499.
Even if the statute was only intended to create a civil duty, a court should not apply it retroactively to impose liability unless its terms "are so clear, strong and imperative that no other meaning can be annexed to them, or unless the interest of the legislature cannot otherwise be satisfied." Kopczynski v. County of Camden, 2 N.J. 419, 424 (1949). No such intent can be found in this legislation to justify using the conduct it proscribes as a tort standard. The use of this statute to create a standard of conduct in a tort setting would change the settled law as of the date of this accident and impose liability where none previously existed. Statutes which are designed to change settled law and relate to substantive rights and liabilities are construed to operate prospectively in the absence of clear legislative intent. Fox v. Snow, 6 N.J. 12, 14 (1950); Neel v. Ball, 6 N.J. 546, 551 (1951); Terracciona v. Magee, 53 N.J. Super. 557, 566-567 (Law.Div. 1959). Thus, we *375 conclude that the statute should not have been incorporated in the trial judge's instruction to the jury.
Affirmed.
NOTES
[1] Defendant Stephen Romeihs' name is misspelled in the complaint.
[2] Because our resolution of this issue results in an affirmance of the judgment of no liability in favor of the defendant Romeihs we need not address the other issues raised on appeal.