588 A.2d 816

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
FRANK GONZALEZ, DEFENDANT-APPELLANT.

Argued January 2, 1990—Decided April 9, 1991.

*Susan Green,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*Nancy Permes Barton,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

PER CURIAM.

A jury convicted defendant, Frank Gonzalez, of unlawful distribution of cocaine, a violation of *N.J.S.A.* 2C:35–5(a) (the Section 5 offense). The amount distributed was less than one-half ounce, making the crime one of the third degree. *N.J.S.A.* 2C:35–5b(3). Because the jury determined that the distribution had been within 1,000 feet of school property, a violation of *N.J.S.A.* 2C:35–7 (the Section 7 offense), it convicted defendant of that third-degree crime as well. The trial court sentenced Gonzalez to two concurrent five-year custodial terms, with a minimum parole-ineligibility period on the Section 7 offense as mandated by the statute. In addition, the court imposed fees and monetary penalties and revoked defendant's driver's license.

Rejecting defendant's argument that the trial court should have merged the Section 5 and the Section 7 offenses, the Appellate Division affirmed, *State v. Gonzalez,* 241 *N.J.Super.* 92, 574 *A.*2d 487 (1990), relying on Section 7's antimerger provision, which reads:

Notwithstanding the provisions of *N.J.S.* 2C:1–8 [dealing with prosecution of conduct that constitutes more than one offense] or any other provisions of law,

a conviction arising under this section shall not merge with a conviction for a violation of subsection a. of *N.J.S.* 2C:35–5 (manufacturing, distributing or dispensing) or *N.J.S.* 2C:35–6 (employing a juvenile in a drug distribution scheme).

Judge Skillman dissented from so much of the majority opinion as upheld defendant's conviction and sentence under *N.J.S.A.* 2C:35–5. *Id.* at 99–108, 574 *A.*2d 487. The dissent interpreted Section 7's antimerger provision to bar the merger of convictions under that section into convictions under Section 5 but not to apply to the merger of convictions under Section 5 into convictions under Section 7. Defendant's appeal is here as of right because of the dissent below. *R.* 2:2–1(a)(2).

We reverse the judgment below to the extent that it affirms defendant's conviction of the Section 5 offense and prohibits its merger into the Section 7 violation. We do so substantially on the basis of the perceptive analysis contained in Judge Skillman's dissent, in which he addresses—correctly, in our view— (1) the law of merger, 241 *N.J.Super.* at 99–100, 106–08, 574 *A.*2d 487; (2) the antimerger provision of Section 7, *id.* at 100–03, 104–06, 574 *A.*2d 487; and (3) applicable principles of statutory construction, *id.* at 103–04, 574 *A.*2d 487.

We add a note of caution, however. Judge Skillman's opinion can be read to allow, when general merger principles would apply, the merger of *all N.J.S.A.* 2C:35–5(a) convictions for distribution into *N.J.S.A.* 2C:35–7 convictions for distribution within 1,000 feet of school property. Our holding, we emphasize, is narrower, and is limited only to those Section 5 offenses that are of the third or fourth degree, *e.g., N.J.S.A.* 2C:35–5b(3), (5), (9), (11), (12), (13), and (14). We do not reach, and we imply no position on, the issue of merger of first- and second-degree Section 5 offenses with a Section 7 crime, nor the constitutional implications in the event of non-merger. Ours is strictly a statutory-interpretation decision. See *State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 100–10, 557 *A.*2d 277 (1989), and *id.* at 112–25, 557 *A.*2d 277 (Handler, J., concurring). For a determination of the above-stated reserved question we are content

to await a case in which, unlike this appeal, the issues are posed directly and in which the argument is sharply focused. On our docket is *State v. Dillihay*, decision below reported at 241 *N.J. Super.* 553, 575 *A.*2d 876 (App.Div.1990), here as of right, which raises the propriety of merger of a second-degree Section 5 offense with a Section 7 crime.

The judgment of the Appellate Division is reversed in part, and the cause is remanded to the trial court for entry of an amended judgment vacating defendant's conviction under *N.J. S.A.* 2C:35–5a(1) and –5b(3).

O'HERN, J., dissenting.

It is one thing to sell drugs; it is another thing to sell drugs on school grounds; it is still another thing to employ children in the drug trade. The Legislature has viewed those acts as posing distinct threats to society. It has made each of them a separate criminal offense. It has prescribed separate and distinct punishments for each of the offenses.

The Legislature has expressly stated that the distinct offenses shall not merge. *N.J.S.A.* 2C:35–7, which criminalizes the sale of drugs on school property, states that "a conviction arising under this section shall not merge with a conviction for a violation of subsection a. of *N.J.S.* 2C:35–5 (manufacturing, distributing or dispensing) or *N.J.S.* 2C:35–6 (employing a juvenile in a drug distribution scheme)." *N.J.S.A.* 2C:35–6 states "a conviction arising under this section shall not merge with a conviction for a violation of *N.J.S.* 2C:35–3 (leader of narcotics trafficking network), *N.J.S.* 2C:35–4 (maintaining or operating a CDS production facility), *N.J.S.* 2C:35–5 (manufacturing, distributing or dispensing), or *N.J.S.* 2C:35–9 (strict liability for drug induced death)."

Notwithstanding that the Legislature has expressly stated that courts should not merge those distinct offenses, this Court has done exactly that. Profits are the key to the drug trade. Putting aside for a moment the range of sentences involved, the

financial disincentive to make a drug deal in a school yard is no greater than to make a drug deal at a safe house. (Each of the separate offenses carries a mandatory drug enforcement and demand reduction (DEDR) penalty, which is placed in a fund used for alcohol- and drug-abuse programs. *N.J.S.A.* 2C:35–15.) Considering the special evil that merchants of drugs inflict on children, I am certain that the Legislature did not intend that result, and no principle of statutory or constitutional law requires it.

I say that no principle of statutory law compels that result because the Legislature itself has prescribed that there shall be no statutory merger. The ordinary principles of statutory merger of convictions, *see N.J.S.A.* 2C:1–8 (convictions should be merged when one offense "is established by proof of the same or less than all the facts required to establish" the other offense), simply do not apply when the Legislature has provided otherwise. As stated in *N.J.S.A.* 2C:1–2c, the "provisions of the code shall be construed according to the fair import of their terms but * * * the language * * * shall be interpreted to further the general purposes stated in this section and the *special purposes of the particular provision involved.*" (Emphasis added.) The constitutional principle is equally clear and well settled:

> In contrast to the double jeopardy protection[1] against multiple trials, the final component of double jeopardy—protection against cumulative punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent.
>
> [*Ohio v. Johnson,* 467 *U.S.* 493, 499, 104 *S.Ct.* 2536, 2540–41, 81 *L.Ed.*2d 425, 433 (1984) (citations omitted).]

---

[1]Double jeopardy has three aspects: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969).

Thus, "[w]here [the Legislature] intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Albernaz v. United States,* 450 *U.S.* 333, 344, 101 *S.Ct.* 1137, 1145, 67 *L.Ed.*2d 275, 285 (1981).

To understand how the first two components of double jeopardy relate to today's issue, we need to give an example. Let us assume that the State had first tried defendant for a sale of drugs on school property committed on October 26, 1987, under Section 7. Under no circumstances would we ever say that he could later be tried for a straight sale of drugs (the Section 5 violation) if but a single sale had occurred at that time. That is the "slice of life" for which you can only be put in jeopardy once. The Supreme Court has recently affirmed that principle. *Grady v. Corbin,* 495 *U.S.* ——, 110 *S.Ct.* 2084, 109 *L.Ed.*2d 548 (1990).

In applying the third aspect of double jeopardy to this case, we must examine the common-law doctrine of merger. The judicial and statutory doctrines of merger are essentially driven by considerations of fairness. In recent years, the Court has eschewed the mechanical application of formulas to determine whether the merger doctrine applies. Instead, the Court uses

a certain flexibility of approach * * *, attended by considerations of "fairness and fulfillment of reasonable expectations in the light of constitutional and common law goals." Such an approach would entail analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. Certainly there are other factors to be considered and, along with the above, accorded greater or lesser weight depending on the circumstances of the particular case.

[*State v. Davis,* 68 *N.J.* 69, 81, 342 *A.*2d 841 (1975) (citation omitted).]

In *Davis,* convictions on separate counts of unlawful possession and unlawful sale of a narcotic drug did not merge because evidence showed that the possession was not purely incidental to imminent distribution. *Id.* at 83–84, 342 *A.*2d 841. The defendant was both a seller and a user. The Court found a clear legislative intent, *id.* at 78, 342 *A.*2d 841, to punish each

separate stage of the drug trade—possession, marketing, and ultimate distribution—and found that there was "no coincidence of proof" between those separate stages. *Id.* at 83, 342 *A.*2d 841.

In *State v. Mirault,* 92 *N.J.* 492, 457 *A.*2d 455 (1983), we merged a conviction of aggravated assault into a conviction of robbery. We did so in part because the former offense had already fulfilled the distinct legislative purpose of elevating the grade of the robbery to first-degree, then the highest crime other than murder of which one could be convicted. By virtue of the assault conviction, then, the defendant was exposed under the robbery count to a fifteen-year presumptive sentence. We noted, however, that had the State charged assault on a police officer, the merger considerations would be different for several reasons, particularly the status of the victim as a police officer. We said that the legislative concern for the police may well have evidenced a specific intent to fractionalize the event. In *State v. Best,* 70 *N.J.* 56, 69, 356 *A.*2d 385 (1976), the Court recognized that the Legislature may fractionalize a single criminal episode into separate offenses when the acts are in fact distinct, when the Legislature intends them to be punished separately, and when the fractionalization does not offend constitutional principles. In *State v. Miller,* 108 *N.J.* 112, 527 *A.*2d 1362 (1987), we recognized that the single criminal episode of committing a sexual assault on a child and endangering the welfare of a minor in one's custody represented separate offenses that the Legislature intended to punish separately.

Perhaps Chief Justice Warren best expressed the nature of the doctrine of merger with respect to punishment: "The problem of multiple punishment is a vexing and recurring one." *Gore v. United States,* 357 *U.S.* 386, 393, 78 *S.Ct.* 1280, 1285, 2 *L.Ed.*2d 1405, 1411 (1958) (Warren, C.J., dissenting). He gave an easy illustration of when a single event might require two punishments. The single act of selling liquor on a Sunday night might warrant separate punishments for violation of a prohibition law and a blue law. Similarly, selling drugs on

school property might warrant two punishments for violating a drug law and a school law. He pointed out:

> In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration.[2] But this fact should not lead the judiciary, charged with the obligation of construing these statutes, to settle such questions by the easy application of stereotyped formulae. It is at the same time too easy and too arbitrary to apply a presumption for or against multiple punishment in all cases or even to do so one way in one class of cases and the other way in another. Placing a case in the category of unit-of-offense problems or the category of overlapping-statute problems may point up the issue, but it does not resolve it.
>
> Where the legislature has failed to make its intention manifest, courts should proceed cautiously, remaining sensitive to the interests of defendant and society alike. All relevant criteria must be considered and the most useful aid will often be common sense.
>
> [*Id.* at 394, 78 *S.Ct.* at 1285, 2 *L.Ed.*2d at 1411.]

In *Gore*, Chief Justice Warren was convinced, on the basis of the origins and structure of the statutes, that the purpose of the statutes was to ensure that the prosecutor had "three avenues by which to prosecute one who traffics in narcotics, and not to authorize three cumulative punishments for the defendant who consummates a single sale." *Ibid.* In contrast, in our case, it is overwhelmingly clear that the Legislature intended that there be cumulative punishments; the "explicit legislative consideration" sought by Chief Justice Warren is present here.

Passing over the differences between Section 5 and Section 7 of *N.J.S.A.* 2C:35, the majority overlooks both the literal terms and the history of the statute. The special concerns underlying Section 7 are evidenced by the distinct treatment lawmakers gave to the attempt to eradicate the practice of the drug trade on our children in our schools. Sections 5 and 7 were introduced separately into the Legislature: Section 7 was introduced by Senator Frank X. Graves, Jr., on July 29, 1986, as Senate Bill 2449, and Section 5 was introduced by Assembly member

---

[2]How striking it is that in this case, when the problem received explicit legislative consideration, the Court overlooks it.

Walter M.D. Kern, Jr., on October 20, 1986, as part of Assembly Bill 3270. Although the remaining sections of *N.J.S.A.* 2C:35, including the provision on employing minors, were enacted together as part of the Comprehensive Drug Reform Act under chapter 106 of Law 1987, Section 7 was enacted under a different chapter, chapter 101, which some referred to as the Drug–Free Schools Act. A week before Governor Kean signed the Comprehensive Drug Reform Act into law, he signed the Drug–Free Schools Act before a group of school children during a special ceremony held near Roberto Clemente Park in Paterson. The Star Ledger, June 1, 1987, at 12, col. 1. In describing the drug legislation of 1987, former Attorney General Cary Edwards stated that "[i]t's now a separate crime in New Jersey to sell drugs in a school building or on school property." Herald & News, Jan. 27, 1991, at B1, col. 1. Senator Graves, sponsor of the Drug–Free School Bill, explained the special message of Section 7: "Those who would corrupt our school children must know that it is our clear intention to take them out of society because they don't belong there. * * * We're going to say to the drug dealers: 'Stay away from our kids. Stay away from our schools.'" The Record, Feb. 24, 1987, at A3, col. 2. By assuming that the merger clause bars only the merger of a Section 7 violation into a Section 5 violation, the majority weakens that all-important message. Given the distinct treatment that lawmakers have given to Section 7 offenses, I think it highly unlikely that they would have ever contemplated the distinction that the majority has drawn from the merger clause. These legislators were plain-spoken. When they said that a Section 7 conviction "shall not merge with" a Section 5 conviction, I doubt that they thought the preposition "with" could be interpreted as having the limited meaning the majority places on it. No dictionary definition of "with" conveys such a one-dimensional meaning. As Judge Stern stated in *State v. Graham*, 245 *N.J.Super.* 257, 584 *A.*2d 878 (App.Div.1991):

The Legislature's express statement that an offense under *N.J.S.A.* 2C:35–7 shall not merge "with" seems to clearly prohibit exactly what [the majority] suggests it permitted. *N.J.S.A.* 2C:35–7 does *not* permit merger of offenses under *N.J.S.A.* 2C:35–5 into *N.J.S.A.* 2C:35–7, or vice versa, provided that the ineligibility term survives. It plainly prohibits the merger of each "with" the other. [The] conclusion [of the majority here] would have support if the Legislature in *N.J.S.A.* 2C:35–7 permitted the merger of one offense "into" the other, or didn't bar their merger, so long as the ineligibility term survived. The Legislature certainly knew how to provide for the survival of the mandatory ineligibility term without prohibiting merger when, for example, it enacted the Graves Act, *N.J.S.A.* 2C:43–6c, which requires imposition of a mandatory ineligibility term but does not prohibit merger of Graves Act and other offenses.

In sum, no constitutional principle forbids the Legislature to impose separate punishments for separate offenses against society. Nothing has changed since *Davis* and *Gore.* *State v. DeLuca,* 108 *N.J.* 98, 527 *A.*2d 1355, *cert. denied,* 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987), involved the problem of multiple prosecutions, not multiple punishments. In that case, we made it clear that if a second offense (assume, the sale of drugs generally) requires no proof beyond that which is required for a conviction of the first offense (the sale of drugs on school property), the two offenses are the same for double-jeopardy purposes. However, that, as I say, involves the entirely different proposition of two bites at the apple, which is clearly covered by the double-jeopardy clause. There is no aspect of that here.

A final thought on the problem of "fairness." Perhaps a stronger argument for the Court's position could be made if we had not already dealt with the problem of consecutive sentencing. As we learned at oral argument, the prison time for the two offenses is most often run concurrently. Any consecutive features of prison sentences would be governed by the strictures of *State v. Yarbough,* 100 *N.J.* 627, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). All that the Court really accomplishes is to give the person pushing drugs on school property a record with one conviction and not two, and in effect no DEDR fine at all for making the sale on school property.

GARIBALDI, J., joins in this opinion.

*For reversal in part; remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK and STEIN—5.

*For affirmance*—Justices O'HERN and GARIBALDI—2.