607 A.2d 997

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
CHARLES THOMAS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 28, 1992—Decided May 18, 1992.

564 

Before Judges ANTELL, BAIME and THOMAS.

*Wilfredo Caraballo,* Public Defender, attorney for appellant (*William Welaj,* designated counsel, of counsel and on the brief).

*James F. Mulvihill,* Acting Essex County Prosecutor, attorney for respondent (*Maryann K. Lynch,* Assistant Prosecutor, of counsel and on the letter-brief).

BAIME, J.A.D.

Tried by a jury, defendant was found guilty of conspiracy to distribute a controlled dangerous substance (*N.J.S.A.* 2C:5–2), possession of cocaine (*N.J.S.A.* 2C:35–10a(1)), possession of the same drug with intent to distribute (*N.J.S.A.* 2C:35–5b(3)), and possession of the same drug with intent to distribute within 1,000 feet of school property (*N.J.S.A.* 2C:35–7). After applying the doctrine of merger, the trial court imposed a custodial term of five years on the violation of *N.J.S.A.* 2C:35–5b(3), and a concurrent five year sentence on the conviction for possession of cocaine with intent to distribute near school property. On the latter conviction, the court imposed a minimum term of three years during which defendant is to be ineligible for parole pursuant to the mandate of *N.J.S.A.* 2C:35–7. The applicable penalties and laboratory fees were also imposed.

On appeal, defendant contends that (1) the conviction for violating *N.J.S.A.* 2C:35–5b(3) should have merged with that for possession of cocaine with intent to distribute near school property, (2) the verdict was against the weight of the evidence, (3) *N.J.S.A.* 2C:35–7 contravenes due process and equal protection, (4) evidence of defendant's prior convictions should have been excluded, and (5) the mandatory penalties provided by *N.J.S.A.* 2C:35–15 are unconstitutional. The latter three arguments clearly lack merit and do not require discussion. *R.* 2:11–3(e)(2). We agree with defendant's assertion that the conviction under *N.J.S.A.* 2C:35–5b(3) merged with that for possession of a controlled dangerous substance with intent to distribute near school property. The conviction, sentence and penalty imposed for the violation of *N.J.S.A.* 2C:35–5b(3) are thus reversed and vacated. *See State v. Gonzalez*, 123 *N.J.* 462, 588 *A.*2d 816 (1991).

We come then to defendant's claim that his conviction for possession of cocaine with intent to distribute within 1,000 feet of school property must be reversed because the verdict was against the weight of the evidence. Defendant contends that

the State failed to establish one of the elements of the crime, *i.e.,* that the offense was committed within 1,000 feet of school property used for school purposes. The record discloses that the State admitted into evidence an official map of the City of Newark which indicated that the crime was committed within 1,000 feet of Madison Avenue School. Because no other evidence was presented showing that the Madison Avenue School was used for school purposes, defendant argues that his conviction should be reversed.

■ Initially, we note that this point was never advanced in the Law Division. Defendant never moved for a judgment of acquittal or for a new trial on the basis of the argument he now asserts. The issue first raised here is not cognizable. *R.* 2:10–1; *see also Thomas v. Romeis,* 234 *N.J.Super.* 364, 369, 560 *A.*2d 1267 (App.Div.1989); *State v. Mangrella,* 214 *N.J.Super.* 437, 441 n. 3, 519 *A.*2d 926 (App.Div.1986), *certif. denied,* 107 *N.J.* 127, 526 *A.*2d 194 (1987); *State v. Lopez,* 213 *N.J.Super.* 324, 330, 517 *A.*2d 457 (App.Div.1985), *certif. denied,* 103 *N.J.* 480, 511 *A.*2d 657 (1986); *State v. Allison,* 208 *N.J.Super.* 9, 14, 504 *A.*2d 1184 (App.Div.), *certif. denied,* 102 *N.J.* 370, 508 *A.*2d 235 (1985).

■ Even if we were to consider the merits of defendant's contention, we would not reverse on this basis. In our view, absent evidence to the contrary, proof that the crime was committed within 1,000 feet of a school creates a permissive inference that the property was used for school purposes and requires submission of the question to the jury with appropriate instructions. We are convinced that where the property is designated as an actual school, the jury may reasonably infer that it is being "used for school purposes." In reaching this conclusion, we recognize that *N.J.S.A.* 2C:35–7 is only applicable where the criminal act is both committed within 1,000 feet of "school property" *and* the property is being "used for school purposes." *State v. Ivory,* 124 *N.J.* 582, 591, 592 *A.*2d 205 (1991). We also acknowledge that "[b]ecause a title [or] lease

... will sometimes establish only the first prong, we must occasionally look for other indicia of actual use to satisfy the second prong." *Ibid.* However, here the proofs were not at all ambiguous. Madison Avenue School is just that, a school. In this respect, our Supreme Court recently observed that "[i]n most cases, like that of a school itself, or playgrounds immediately adjacent to the school, use 'for school purposes' [is] self-evident." *Ibid.* That observation, although made in a slightly different context, is fully applicable here.

*N.J.S.A.* 2C:35–7 specifically authorizes the admission of an official map in order to establish the proximity of the crime to school property. The statute reads in pertinent part as follows:

In a prosecution under this section, a map produced or reproduced by any municipal or county engineer for the purpose of depicting the location and boundaries of the area on or within 1,000 feet of any property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or a true copy of such a map, shall, upon proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas, provided that the governing body of the municipality or county has adopted a resolution or ordinance approving the map as official finding and record of the location and boundaries of the area or areas on or within 1,000 feet of the school property. Any map approved pursuant to this section may be changed from time to time by the governing body of the municipality or county. The original of every map approved or revised pursuant to this section, or a true copy thereof, shall be filed with the clerk of the municipality or county, and shall be maintained as an official record of the municipality or county. Nothing in this section shall be construed to preclude the prosecution from introducing or relying upon any other evidence or testimony to establish any element of this offense; nor shall this section be construed to preclude the use or admissibility of any map or diagram other than one which has been approved by the governing body of a municipality or county, provided that the map or diagram is otherwise admissible pursuant to the Rules of Evidence.

Unfortunately, the truncated record submitted to us does not clearly indicate whether the map introduced into evidence in this case was approved by municipal ordinance or resolution. Nor does the transcript indicate whether the municipality's approval of the map was intended to merely delineate areas within 1,000 feet of school property or whether, in addition, the approval constituted an official finding that the school was used

for school purposes. While it appears from the record that the map satisfied the statutory requisites, we cannot be sure. We note, however, that defense counsel never interposed an objection on the basis that the map had not been approved by the governing body or that it was approved only with respect to delineation of the areas within 1,000 feet of school property. Nor was either point addressed in defendant's motion for a new trial which, as we have mentioned, did not even raise the issue presented here. Under these circumstances, we cannot fairly say that plain error was committed.[1] *R.* 2:10–2.

In any event, the overriding fact is that the map was stipulated into evidence and clearly disclosed that the crime was committed within 1,000 feet of Madison Avenue School. Whether approved by the governing body or not, the map created a permissive inference that Madison Avenue School was used for school purposes. The question was properly submitted to the jury. Having said this, we expect that in the future the proponent of such evidence will, at minimum, introduce the requisite municipal resolution or ordinance along with the official map. Clearly, it is the preferred practice.

Although the map was critical to the State's case because it established the proximity of the crime to Madison Avenue School, we do not regard *N.J.S.A.* 2C:35–7 as dispositive of the issue presented. In other words, we would reach the same result even in the absence of a map if a police officer or other witness were to testify regarding the proximity of the school to the offense. We regard it as demonstrably probable that, as a matter of common experience, a school is used for school

---

[1]Even if the map was not approved by the governing body, or if the approval only pertained to the delineation of the 1,000 foot area surrounding the school, the result would not be different. *N.J.S.A.* 2C:35–7 expressly authorizes introduction of an unapproved map as long as it is otherwise admissible "pursuant to the Rules of Evidence." There is a host of exceptions to the hearsay rule which might permit admission of a map, depending upon the circumstances. *See, e.g., Evid.R.* 63(13); *Evid.R.* 63(15); *Evid.R.* 63(27).

purposes. The inferred fact, use of property for school purposes, reasonably flows from the fact already established, the existence of a school. *See State v. Ingram,* 98 *N.J.* 489, 496, 488 *A.*2d 545 (1989). In our view, "the normal balance of probability" is that a school, as opposed to other types of school property, is used for school purposes. *Tot v. United States,* 319 *U.S.* 463, 469, 63 *S.Ct.* 1241, 1246, 87 *L.Ed.* 1519, 1525 (1943).

 This permissive inference does not lessen the State's burden of proving both "prongs" of the statutory element, the proximity of the crime to school property and the use of school property for school purposes. *State v. Ivory,* 124 *N.J.* at 591, 592 *A.*2d 205; *see also State v. Dixon,* 114 *N.J.* 111, 113, 553 *A.*2d 1 (1989); *State v. Swed,* 255 *N.J.Super.* 228, 241, 604 *A.*2d 978, 984 (App.Div.1992) (slip opinion at 14). Nor does it undermine the factfinder's responsibility. It has long been recognized that not all facts need be proved by direct evidence. *State v. Franklin,* 52 *N.J.* 386, 406, 245 *A.*2d 356 (1968); *State v. Siciliano,* 21 *N.J.* 249, 259, 121 *A.*2d 490 (1956). Circumstantial evidence may be "more certain, satisfying and persuasive than direct evidence." *State v. Dancyger,* 29 *N.J.* 76, 84, 148 *A.*2d 155, *cert. denied,* 360 *U.S.* 903, 79 *S.Ct.* 1286, 3 *L.Ed.*2d 1255 (1959) (quoting *State v. Donohue,* 2 *N.J.* 381, 389, 67 *A.*2d 152 (1949)). The process of all evidence "is an inference from one fact to the existence of another." *State v. Mucci,* 25 *N.J.* 423, 431, 136 *A.*2d 761 (1957). "Evidence is always a relative term; it signifies a relation between two facts, the '*factum probandum,*' or proposition to be established, and the '*factum probans,*' or material evidencing the proposition...." *Ibid.* The rational essence of an inference is the "reasonable probability of the identity and authenticity of something deduced from its conformity or repugnancy to our general knowledge, common observation and experience." *Davidson v. Fornicola,* 38 *N.J.Super.* 365, 378, 118 *A.*2d 838 (App.Div.1955), *certif. denied,* 20 *N.J.* 467, 120 *A.*2d 275 (1956). An inference attains practical utility where the "existence of one established fact

rationally and logically in the light of common experiences warrants the belief of the existence of some other fact." *Ibid.*; *see also State v. Humphreys,* 54 *N.J.* 406, 415, 255 *A.*2d 273 (1969); *State v. DiRienzo,* 53 *N.J.* 360, 376, 251 *A.*2d 99 (1969).

Against this backdrop, we think most people would infer that a school is used for school purposes, even in this age of skepticism. Although this is not invariably true, common experience indicates that one fact generally flows from the other. In the absence of evidence to the contrary, we are satisfied a jury may reasonably infer that a school is used for school purposes. Of course, the factfinder is free to reject that thesis. The point we stress is that the question is for the jury to resolve.

*State v. King,* 248 *N.J.Super.* 173, 590 *A.*2d 700 (App.Div. 1991) is distinguishable. There, the trial court did not clearly instruct the jury that in order to convict it must find that a crime was committed within 1,000 feet of school property "used for school purposes." *Id.* at 178, 590 *A.*2d 700. Here, the court repeatedly charged the jury that the enhanced penalty provided by *N.J.S.A.* 2C:35–7 was applicable only if the school was "used for school purposes." The decision in *King* is distinguishable for another reason. Unlike this case, the defendant moved for a judgment of acquittal at the conclusion of the State's evidence, thereby alerting the prosecutor to the alleged deficiency in the proofs. *Id.* at 177, 590 *A.*2d 700. Here, defense counsel was entirely silent on the issue, in effect, choosing to lie in wait and hope for appellate intervention in the event of a conviction.

To the extent that *King* derogates against our conclusion here, we respectfully disagree. We recognize that "[i]f the State seeks to invoke the enhanced mandatory penalties provided by *N.J.S.A.* 2C:35–7, it must be prepared to meet all the criteria specified for prosecution under that statute." *Id.* at 179, 590 *A.*2d 700. This much conceded, we are convinced that, in the absence of other evidence to the contrary, introduction of a municipal map showing the presence of a school within 1,000

feet of the place where the crime occurred is a fact upon which the jury can reasonably infer that the school is "used for school purposes." Accordingly, this is a question for the jury to resolve. Of course, we acknowledge that "it is not uncommon for school buildings to be 'retired' from school purposes...." *Id.* at 176, 590 *A.*2d 700. However, the State's proofs need not exhaust all possibilities other than the hypothesis of guilt in order to have the matter submitted to the jury. We are concerned here with whether introduction of the map created a permissive inference regarding the current use of the school for school purposes. We are satisfied that it did. In sum, we do not find that the result reached by the jury "was a miscarriage of justice under the law." *R.* 2:10–1.

The conviction for possession of a controlled dangerous substance with intent to distribute and the sentence and penalty imposed thereon are vacated. The conviction for possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property is affirmed. The judgment is modified accordingly.

ANTELL, P.J.A.D. (dissenting).

The majority acknowledges that to violate *N.J.S.A.* 2C:35–7 one must not only possess with intent to distribute a controlled dangerous substance within 1000 feet of school property, but also that the property must be "used for school purposes." The latter requirement is clearly an essential element of the offense. *State v. Ivory,* 124 *N.J.* 582, 588, 592 *A.*2d 205 (1991). However, the majority holds that this element is satisfactorily proved by a map which shows nothing more than the area within a 1000 foot radius of a school building.

*N.J.S.A.* 2C:35–7 specifically authorizes in prosecutions thereunder the admission of a map showing the location of school property "used for school purposes" where the governing body of the municipality or county "has adopted a resolution or ordinance approving the map as official finding and record of

the location and boundaries of the area or areas on or within 1000 feet of the school property." As the majority notes, it is altogether unclear whether the necessary governmental action was ever taken to approve the map as an official finding under the statute. Furthermore, neither the map nor anything else in the record indicates that the building was used for school purposes. The majority, however, reaches its desired result by concluding that the existence of a school building "creates a permissive inference that the property was used for school purposes." This pronouncement disregards the clearly expressed legislative recognition that there are some school buildings that are used for school purposes and others that are not. The nature of the proof required to demonstrate that the school property is "used for school purposes" was discussed in the following language of *State v. Ivory, supra:*

*N.J.S.A.* 2C:35–7 will apply only where both prongs are met. The property must be "school property," meaning owned by or leased to a primary- or secondary-education entity. The property must also be "used for school purposes." Because a title, lease, or analogous "Participation and Contribution Agreement" will sometimes establish only the first prong, we must occasionally look for other indicia of actual use to satisfy the second prong. In most cases, like that of a school itself, or playgrounds immediately adjacent to the school, use "for school purposes" will be self-evident. In other cases, the property may be marked by signs, flags, or banners indicating the school use. Recently, many municipalities have posted "Drug Free School Zone" signs at the edges of the safety zones. All of those would demonstrate actual use in cases in which supporting documents did not describe a then-current use.

Other situations involving less-immediately identifiable property uses may prove more ambiguous. In such cases, the courts could look to other evidence such as published schedules, newspaper accounts, photographs and the like to establish that such property is regularly, consistently, and actually "used for school purposes" and not merely owned by an educational entity. So long as there are indicia from which an objectively reasonable person could know that the school property was used regularly, consistently, and actually for school purposes, lack of knowledge by a drug dealer, or a stranger, or, for that matter, a resident that he or she is within 1,000 feet of school property is irrelevant. Under such circumstances prosecution of a defendant under this statute does not violate due process.

124 *N.J.* at 591–92, 592 *A.*2d 205.

The searching character of the foregoing language renders it most unlikely that our Supreme Court would allow this essen-

tial element of the crime to be proven inferentially from the mere presence of a school building. If the court believed that the mere presence of a school building itself bespeaks the fact that it is used for school purposes it would not have so painstakingly catalogued the various ways in which this critical fact might be proved. Indeed, if the majority's position is sound it would not have been necessary for the Legislature to write this important condition into the statute. While it is true that in most cases the property's use for school purposes "will be self-evident," as *Ivory* states, in this case not even a suggestion of such self-evident use, such as the fact that children were actually seen attending the school, can be found in the proofs. Despite the fact that this could have been proved with the utmost simplicity, either by direct or circumstantial evidence, it was completely overlooked by the State.

In my view, the Legislature drafted this statute to allow for the possibility that school buildings would sometimes lie vacant or sometimes be put to uses other than as a school. The purpose of the statute is "to protect children from the evils of CDS," *State v. Baez,* 238 *N.J.Super.* 93, 97, 569 *A.*2d 268 (App.Div.), *certif. denied,* 121 *N.J.* 644, 583 *A.*2d 335 (1990), and as Justice Garibaldi stated in *State v. Ivory, supra,* courts may receive a variety of evidence "to establish that such property is regularly, consistently, and actually 'used for school purposes' and not merely owned by an educational entity." 124 *N.J.* at 592, 592 *A.*2d 205. Because such evidence is absent from this record an essential element of the offense was not proved and I would therefore vote to reverse the conviction for the reasons stated in *State v. King,* 248 *N.J.Super.* 173, 590 *A.*2d 700 (App.Div.1991).