903 A.2d 457 (2006)
387 N.J. Super. 129
STATE of New Jersey, Plaintiff-Respondent,
v.
Michael R. MARTINEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2005.
Decided August 2, 2006.
*459 Linda Mehling, Assistant Deputy Public Defender, argued the cause for appellant (Yvonne Smith Segars, Public Defender, attorney; M. Virginia Barta, Assistant Deputy Public Defender, on the brief).
William K. Meighan, Assistant Prosecutor, argued the cause for respondent (Thomas F. Kelaher, Ocean County Prosecutor, attorney; Patricia S. Toreki, Assistant Prosecutor, on the brief).
Before Judges COBURN, COLLESTER and LISA.
The opinion of the court was delivered by
COLLESTER, J.A.D.
Tried to a jury, defendant Michael R. Martinez was found guilty of the following counts of an indictment: third-degree possession of a controlled dangerous substance (cocaine) contrary to N.J.S.A. 2C:35-10a(1) (count one); second-degree possession of cocaine with the intent to distribute contrary to N.J.S.A. 2C:35-5a(1) (count two); fourth-degree unlawful possession of metal knuckles and a stun gun contrary to N.J.S.A. 2C:39-5d (counts three and four); fourth-degree possession of prohibited weapons (metal knuckles and a stun gun) contrary to N.J.S.A. 2C:39-3e (counts five and six); third-degree possession of weapons for an unlawful purpose (butterfly knife, metal knuckles and a stun gun) contrary to N.J.S.A. 2C:39-4d (counts seven, eight and nine); second-degree possession of a firearms for an unlawful purpose (handgun and a pellet gun) contrary to N.J.S.A. 2C:39-4a (counts ten and eleven); second-degree possession of firearms (handgun and a pellet gun) while engaged in drug activity contrary to N.J.S.A. 2C:39-4.1a (counts twelve and thirteen); second-degree possession of *460 weapons (stun gun, metal knuckles and butterfly knife) while engaged in drug activity contrary to N.J.S.A. 2C:39-4.1c (counts sixteen, seventeen and eighteen) and fourth-degree child neglect of M.M. contrary to N.J.S.A. 9:6-3 (count fourteen).
On April 16, 2003, after merger, the trial judge sentenced defendant to a ten-year term with five years parole ineligibility on count two. He merged the weapons counts into the conviction for possession of weapons while engaged in drug activity and added a consecutive term of ten years with five years of parole ineligibility. After imposing a consecutive term of eighteen months with nine months of parole ineligibility on the count of child neglect, the aggregate sentence was twenty-one and one half years with ten years and nine months of parole ineligibility.
Prior to trial defendant and co-defendant Jauron L. Reeves moved to suppress evidence which was seized pursuant to a search warrant and to prevent introduction of statements under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Following an evidentiary hearing, the court denied both motions. Reeves then entered a retraxit plea to the indictment, and the trial proceeded against defendant alone.
The State's case rested largely on the testimony of detectives Joseph Hankins and Jay Howell regarding the August 2, 2001, execution of a search warrant at 1733 Commonwealth Boulevard in Manchester. When the officers entered, defendant was sitting on the living room couch watching television with two children. Reeves and Michele Goins were in another room. The living area included the room in which defendant was sitting, a kitchen, a child's bedroom and another bedroom used by defendant and Reeves. The detectives testified that the rooms were filthy, and there were cockroaches throughout. Crack cocaine was found in a jacket hanging on the door of the bedroom used by defendant and Reeves as well as under a bed, and in a dresser drawer containing mail addressed to the defendant. The officers also found $3,000 in cash, a scale, plastic bags, a stun gun, a butterfly knife, a BB gun resembling a handgun, a .22 caliber handgun loaded with hollow point bullets, and a set of metal knuckles.
The Division of Youth and Family Services took custody of the two children after defendant, Reeves and Goins were arrested and taken to police headquarters. Detective Howell testified that after he gave defendant his Miranda warnings, he admitted to possession of the stun gun and the metal knuckles but denied knowledge of the other weapons and the cocaine.
Daniel Barrett, a forensic scientist with the Ocean County Sheriff's Department, testified that the specimens seized from the bedroom tested positive for cocaine with a total weight of 22.4 grams. He also explained that the hydrochloric acid found in the room is used to convert crack cocaine into powdered cocaine. Investigator Todd Friedman of the Ocean County Prosecutor's Office testified as an expert in narcotics distribution. He said that the cocaine found had a street value of between $2,000 and $3,000. Based on the amount of cocaine, the scale and the plastic bags, he opined that the cocaine was earmarked for distribution.
Testifying for the defense after pleading guilty to the indictment, Reeves claimed he alone possessed the cocaine, the drug paraphernalia, the weapons and that to his knowledge, defendant was unaware that these items were in the bedroom. On cross-examination he denied telling the police that the cocaine belonged both to him and to the defendant. The State recalled Detective Howell in rebuttal, and he said Reeves told him on the day of his arrest *461 that he and the defendant intended to sell the cocaine.
On appeal, the defendant makes the following arguments:

POINT I  THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY FAILING TO CHARGE THE JURORS THAT THEY MUST DISREGARD DEFENDANT'S AND HIS CO-DEFENDANT DEFENSE WITNESS'S OUT-OF-COURT STATEMENTS IF THEY FIND THE STATEMENTS NOT CREDIBLE AND BY FAILING TO GIVE THE CAUTIONARY INSTRUCTION CONCERNING ORAL STATEMENTS AS REQUIRED BY STATE V. JORDAN AND STATE V. KOCIOLEK. (Not Raised Below.)

POINT II  DEFENDANT'S CONVICTION OF CHILD NEGLECT MUST BE VACATED BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION; ADDITIONALLY, THE TRIAL COURT'S INSTRUCTION WAS ERRONEOUS.
A. DEFENDANT IS ENTITLED TO JUDGMENT OF ACQUITTAL ON CHILD NEGLECT.
B. THE COURT'S NEGLECT INSTRUCTION WAS ERRONEOUS.

POINT III  THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS BECAUSE DEFENDANT PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT HE AND THE CO-DEFENDANT WERE NOT IN NEW JERSEY ON THE DATES AND TIME STATED IN THE AFFIDAVIT AND ABSENT INFORMATION ABOUT THE SALE, NO PROBABLE CAUSE SUPPORTED THE WARRANT.

POINT IV  BECAUSE THE NON-MERGER PROVISION OF N.J.S.A. 2C:39-4.1 VIOLATES THE DUE PROCESS AND DOUBLE JEOPARDY PROVISIONS OF THE STATE CONSTITUTION, THE SENTENCE IMPOSED ON THAT COUNT MUST BE VACATED.

POINT V  THE COURT VIOLATED BLAKELY V. WASHINGTON AND ABUSED ITS DISCRETION IN IMPOSING THE MAXIMUM TERMS WITH THE MAXIMUM PERIOD OF PAROLE INELIGIBILITY, AND IN MAKING THE CHILD NEGLECT SENTENCE CONSECUTIVE TO THE OTHER SENTENCES. (Not Raised Below.)
A. UNDER BLAKELY, THE SENTENCES IMPOSED ARE ILLEGAL AND MUST BE VACATED.
B. THE COURT ABUSED ITS SENTENCING DISCRETION UNDER THE CODE OF CRIMINAL JUSTICE.

I.
We first address defendant's argument that reversible error resulted from the failure of the trial judge to instruct the jury that they should disregard the alleged oral admission by defendant to Detective Howell that he possessed the stun gun, metal knuckles and wooden club in the bedroom unless they find the statements credible and, in accordance with State v. Kociolek, 23 N.J. 400, 421, 129 A.2d 417 (1957), that they should weigh this testimony with caution. Since defendant did not request the instructions, we review the matter under the plain error standard. R. 2:10-2; State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
In State v. Hampton, 61 N.J. 250, 272, 294 A.2d 23 (1972), the Supreme Court held that although the trial judge *462 was the sole arbiter of the voluntariness of a defendant's statement, the jury was to be instructed that they should decide whether the statement was true before considering it as evidence. This holding was subsequently codified as N.J.R.E. 104(c). See also State v. Morton, 155 N.J. 383, 428, 715 A.2d 228 (1998), cert. denied, 532 U.S. 931, 121 S.Ct. 1380, 149 L.Ed.2d 306 (2001). Moreover, in Kociolek the Supreme Court recognized the great impact of testimony that a defendant made an oral incriminating admission as well as its inherent weakness of possible misunderstanding and imperfect recollection. Noting that verbal precision may well depend upon "the presence or absence of a single word [to] substantially alter the true meaning of a single sentence," the Court directed that the jury was to be instructed that they should weigh and consider such testimony with caution. Kociolek, supra, 23 N.J. at 421-22, 129 A.2d 417. In State v. Jordan, 147 N.J. 409, 688 A.2d 97 (1997), the Supreme Court underscored the need for Hampton and Kociolek instructions in addition to the general credibility charge by holding that the jury should be so charged even if a defendant made no such request. Id. at 425, 129 A.2d 417. However, Jordan added that failure to instruct in accordance with Hampton or Kociolek absent a request to charge was not reversible error per se but was to be reviewed under the plain error standard. Id. at 425-26, 428, 129 A.2d 417.
After careful review of the record and in light of the overwhelming evidence of defendant's guilt, we find that the failure to charge Hampton and Kociolek did not constitute plain error requiring reversal. Hankins and Howell gave uncontradicted testimony that the pellet gun, metal knuckles and wooden club were found in the room occupied by defendant, some in plain view and the rest within easy reach. Therefore, failure to give the jury Hampton and Kociolek instructions was not of such dimension as to prejudicially affect defendant's substantial rights or raise a reasonable doubt whether the error could lead to a verdict the jury otherwise might not have reached. State v. Macon, 57 N.J. 325, 336, 273 A.2d 1 (1971).
Defendant next argues it was error not to charge Hampton and Kociolek as to Howell's rebuttal testimony. We disagree. Hampton and Kociolek are restricted to oral statements of a defendant, not a witness. As stated in State v. Harris, 156 N.J. 122, 183, 716 A.2d 458 (1998), cert. denied, 532 U.S. 1057, 121 S.Ct. 2204, 149 L.Ed.2d 1034 (2001), "[t]he principal value of the Kociolek charge is to cast a skeptical eye on the sources of inculpatory statements attributed to a defendant." See also Jordan, supra, 147 N.J. at 429, 688 A.2d 97; State v. Boyle, 198 N.J.Super. 64, 74, 486 A.2d 852 (App.Div.1984). Reeves' exculpation of defendant was properly challenged by introduction of an inconsistent prior statement. See N.J.R.E. 613(b).
Defendant contends the need for a cautionary instruction such as indicated in Kociolek is magnified by the trial judge's intervention in his cross-examination of Howell regarding Reeves' earlier statement. Judicial intervention must be exercised with great delicacy to avoid the impression that the judge favors one side. State v. Ross, 80 N.J. 239, 249-50, 403 A.2d 457 (1979); State v. Ray, 43 N.J. 19, 25, 202 A.2d 425 (1964). It is for good and obvious reason that the trial judge must not only be impartial but must appear to be impartial in the eyes of the jury. See State v. Guido, 40 N.J. 191, 208, 191 A.2d 45 (1963). Comments that counsel was "beating around the bush" and should "cut to the chase" were unfortunate and unnecessary to expedite the trial. That said, we are mindful that our review is limited to *463 the dry record and that our standard of review is not 20-20 hindsight. Guido, supra, 40 N.J. at 208, 191 A.2d 45; Medina, supra, 349 N.J.Super. at 131, 793 A.2d 68. After consideration of the entire record, we do not find that the intervention of the trial judge was indicated partiality or deprived defendant of a fair trial, absent a Kociolek instruction.

II.
We next address defendant's contention that the trial court erred in denying his motion to suppress the search warrant based on alleged material falsehoods in the affidavit submitted to the issuing judge. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); State v. Howery, 80 N.J. 563, 404 A.2d 632, cert. denied, 444 U.S. 994, 100 S.Ct. 527, 62 L.Ed.2d 424 (1979). The affidavit sworn to and signed by Detective Joseph Hankins asserted that on July 26, 2001, he and another officer witnessed a hand-to-hand cocaine purchase by a confidential informant (CI) from Reeves. According to the affidavit, Hankins and Detective Howell met with the CI on an earlier occasion, and he told them of arrangements for purchase of crack cocaine at 1733 Commonwealth Boulevard. On July 26, 2001, the officers first searched the CI and his vehicle to insure that he had neither money nor drugs. The CI was then given money for the drug purchase. The affidavit then related:
[T]he affiant and Det. Howell followed MCI 97-10 directly from the prearranged location to 1733 Commonwealth Blvd. where Det. Sharkey and Dsgt. Vosseller were already conducting surveillance of said residence. MCI 97-10 was observed arriving at 1733 Commonwealth Blvd. A black male was observed exiting the residence by the surveillance unit prior the CI's arrival. A hand-to-hand exchange was observed in the driveway between the black male and the CI. The black male previously identified as Jauron Reeves.
MCI 97-10 then backed his/her vehicle out of the driveway and left the area. The affiant and Det. Howell then followed MCI 97-10 directly from 1733 Commonwealth Blvd. Back to the prearranged location. The CI made no stops and met no body (sic) along the way. At this location MCI 97-10 turned over to this affiant a quantity of suspect crack cocaine. MCI 97-10 stated that the black male informed him at the time of the transaction that he and Martinez would be in position of additional quantities of crack cocaine if he/she wished to purchase some.
Both defendant and Reeves alleged that the affidavit was materially false because Reeves was not in New Jersey on July 26. At the plenary hearing defendant testified that he left New Jersey on July 19, 2001, arrived in Boca Raton on July 21 and stayed at a hotel until July 25. He produced a receipt from the hotel and a worksheet dated July 22 from the Radisson Company supporting his testimony that he and Reed purchased a time-share in West Palm Beach. He also introduced two photographs he said showed Reeves standing in front of the time-share and the hotel. He added that after leaving Florida on July 25, Brittany Krysiak received a speeding ticket in South Carolina and that they arrived back in New Jersey on July 27.
Reeves testified and corroborated defendant's testimony. He identified himself in the two photographs and produced an ATM receipt from a machine in Savannah, Georgia dated July 23, 2001, which he claimed was misdated, to show he obtained funds on the way to Florida. Brittany Krysiak also supported defendant's testimony *464 and said that the group returned on the morning of July 27. An abstract of her driving record confirmed a speeding ticket received in South Carolina on July 25.
The State produced Detective Howell, who testified that at about 3 p.m. on July 26 he was in a "tail vehicle" and saw the CI meet Reeves in the driveway at 1733 Commonwealth Boulevard. On cross-examination Howell estimated that he saw Reeves for about ten to fifteen seconds.
The trial judge found Howell's testimony credible, and the testimony of the defense witnesses inconsistent. He concluded that defendant and Reeves failed to show by a preponderance of the evidence that Reeves was not present at 1733 Commonwealth Boulevard on July 26, 2001, and, moreover, they had not met the burden of proof that the statements in Hankins' affidavit were intentionally false or made with reckless disregard for the truth.
We give great deference to the factual and credibility findings of a trial judge when supported by the adequate, substantial and credible evidence in the record. State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964); State v. Locurto, 157 N.J. 463, 474, 724 A.2d 234 (1999). Here there was sufficient evidence for the judge's credibility findings as well as for his ultimate finding that the defendant and Reeves did not meet the requisite burden of proof under Franks to invalidate the search warrant. Moreover, even if we were to ignore these findings by the trial judge, the record does not substantiate the defense contention that Howell's testimony was either perjurious or made with reckless disregard for the truth as to the material facts. Even if Howell's testimony was mistaken in his identification of Reeves, a good faith mistake is insufficient to strike down the warrant. Franks, supra, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682; State v. Marshall, 148 N.J. 89, 193, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997); Howery, supra, 80 N.J. at 566-68, 404 A.2d 632. Finally, even if the statements of the identification of Reeves were excised from the affidavit, the document as a whole still contains sufficient probable cause based on a purchase of crack cocaine by the CI at 1733 Commonwealth Boulevard on July 26. Therefore, the trial judge properly denied the motion to suppress.

III.
We next consider the question of whether there was sufficient evidence presented by the State to support defendant's conviction for fourth degree child neglect pursuant to N.J.S.A. 9:6-3. The fourteenth count of the indictment alleges that the defendant,
knowingly [or] willfully failed to provide proper and sufficient food, clothing, maintenance, medical attention or a clean and proper home and did willfully fail to act to protect the physical or moral well being of M.M., born March 18, 1998, while said child was in his custody and control . . .
The trial prosecutor gave scant attention to this charge, making no mention of it in opening statement or summation. The only evidence adduced by the State was that when the police entered, there were two children sitting on a couch with the defendant watching television. The residence was "filthy," cockroach-infested, and guns and drugs were found in a bedroom. A filthy home does not prove child neglect. New Jersey Div. of Youth and Family Serv. v. C.M., 181 N.J.Super. 190, 201, 436 A.2d 1158 (App.Div.1981); Doe v. G.D., 146 N.J.Super. 419, 431, 370 A.2d 27 (App.Div.1976), aff'd, 74 N.J. 196, 377 A.2d 626 (1977). There was no evidence *465 that the children had access to the bedroom. There was no testimony as to the age or identity of the children or whether they lived in that residence, much less that the defendant was a "parent, guardian or person having the care, custody or control" of the children as required by N.J.S.A. 9:6-3. Similarly, there was no proof to substantiate the charge in the indictment that defendant failed to provide "proper and sufficient food, clothing, maintenance and medical attention." Therefore, we find that the State's evidence was insufficient to convict defendant of child neglect and that defendant's motion to dismiss count fourteen of the indictment was erroneously denied. See State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964).

IV.
We next address defendant's argument that the imposition of cumulative sentences for possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1), and possession of a weapon while engaged in drug activity, N.J.S.A. 2C:39-4.1(a), mandated by the anti-merger provision of N.J.S.A. 2C:39-4.1(d), violated his right of due process and protection against double jeopardy as guaranteed by the New Jersey Constitution.[1] While the issue was raised in State v. Holden, 364 N.J.Super. 504, 837 A.2d 403 (App.Div.2003), we did not reach it since we reversed the defendant's conviction. Therefore, this is a case of first impression.
Both the Fifth Amendment to the Federal Constitution, and Article I, paragraph 11 of the New Jersey Constitution have been interpreted to provide three forms of constitutional protection: (1) protection against a second a prosecution for the same offense after acquittal; (2) protection against the second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-65 (1969); State v. Black, 153 N.J. 438, 443, 710 A.2d 428 (1998); State v. Womack, 145 N.J. 576, 582, 679 A.2d 606, cert. denied, 519 U.S. 1011, 117 S.Ct. 517, 136 L.Ed.2d 405 (1996); State v. Maldonado, 137 N.J. 536, 580, 645 A.2d 1165 (1994). In its constitutional jurisprudence, the United States Supreme Court has stated that the Fifth Amendment prohibition against multiple punishment is a restraint against judges imposing sentences in excess of that intended by the Legislature rather than the imposition of cumulative sentences where the legislation clearly so provides. Ohio v. Johnson, 467 U.S. 493, 499, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425, 433, reh'g denied, 468 U.S. 1224, 105 S.Ct. 20, 82 L.Ed.2d 915 (1984). The Supreme Court succinctly stated this proposition in Missouri v. Hunter, 459 U.S. 359, 368-69, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 544 (1983) that
[w]here . . . a legislature specifically authorizes cumulative punishment under two statutes, . . . a court's task of statutory construction is at an end . . . and the trial court or jury may impose cumulative punishment.
See also Garrett v. United States, 471 U.S. 773, 779, 105 S.Ct. 2407, 2411, 85 *466 L.Ed.2d 764, 771-72, reh'g denied, 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985); Albernaz v. United States, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981).
The Legislature defines what constitutes criminal offenses and the parameters of punishment. State v. Miller, 108 N.J. 112, 116-18, 527 A.2d 1362 (1987); State v. Newman, 223 N.J.Super. 284, 287-88, 538 A.2d 820 (App.Div.1988). It is plain from the language of N.J.S.A. 2C:39-4.1 that it was the intent to significantly increase the penalties when a firearm is possessed in combination with possession of controlled dangerous substances with the intent to distribute. State v. Spivey, 179 N.J. 229, 844 A.2d 512 (2004). And the unambiguous anti-merger bar at N.J.S.A. 2C:39-4.1(d) mandating separate consecutive sentences for the designated crime and the possession of weapons in the course of committing that crime underscores the legislative intent. State v. Harrison, 358 N.J.Super. 578, 585, 818 A.2d 487 (App.Div.2003) aff'd, 179 N.J. 229, 844 A.2d 512 (2004). Since successive punishment is clearly stated, the statute does not violate the Federal Constitution under Hunter.
Defendant argues, however, that we should decline to apply the Hunter rationale in interpreting our State Constitution. He points out that while our Supreme Court has acknowledged that the Federal Constitution remains the primary source of individual rights and the opinion of the United States Supreme Court provides valuable guidance, it has not been reluctant to read comparable State constitutional provisions "more expansively than the federal counterpart when necessary to provide our citizens with enhanced protections." State v. Koedatich, 118 N.J. 513, 572 A.2d 622 (1990). See also State v. Carty, 170 N.J. 632, 790 A.2d 903 (2002); State v. Cooke, 163 N.J. 657, 670, 751 A.2d 92 (2000); State v. Hempele, 120 N.J. 182, 196, 576 A.2d 793 (1990). See generally William J. Brennan, Jr., State Constitutions and the Protection of Individual Rights, 90 Harv. L.Rev. 489, 499 (1977).
In reviewing claims of double jeopardy, our Supreme Court has said that the New Jersey constitutional protection is "at least co-extensive" with the Fifth Amendment as interpreted in Hunter. Black, supra, 153 N.J. at 518, 710 A.2d 450; Maldonado, supra, 137 N.J. at 580, 645 A.2d 1165; Koedatich, supra, 118 N.J. at 518, 572 A.2d 622. In the context of multiple prosecutions, the Court has held that the State Constitution provides the same and no greater protection than that of the federal double jeopardy clause. State v. DeLuca, 108 N.J. 98, 101-02, 527 A.2d 1355, certif. denied, sub nom, New Jersey v. DeLuca, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); State v. Barnes, 84 N.J. 362, 370, 420 A.2d 303 (1980); State v. Capak, 271 N.J.Super. 397, 403, 638 A.2d 918 (App. Div.1994). But in the instance of multiple punishments, the problem is thornier and the constitutional analysis more unsettled. As expressed by Justice Clifford, "with whatever disarming case the prohibition against double punishment may be articulated, its application is not without difficulties." State v. Davis, 68 N.J. 69, 80, 342 A.2d 841 (1975). There is not a clear consensus on whether protection against unconstitutional multiple punishment is grounded in double jeopardy, substantive due process or some other legal tenet. State v. Dillihay, 127 N.J. 42, 47-48, 601 A.2d 1149 (1992); State v. Churchdale Leasing, 115 N.J. 83, 107, 557 A.2d 277 (1989); Davis, supra, 68 N.J. at 77, 342 A.2d 841.
There is no question that our Court has followed the Hunter analysis when no clear legislative mandate for multiple punishment *467 is presented. In such circumstances, it has applied the test of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932), which is that a defendant is unconstitutionally faced with multiple punishment for the "same offense unless each offense requires proof of an additional fact which the other does not." See, e.g., Maldonado, supra, 137 N.J. at 580, 645 A.2d 1165; Dillihay, supra, 127 N.J. at 47-48, 601 A.2d 1149.
Our Court has also not held or stated that it would not follow the other part of Hunter that cumulative punishment is not unconstitutional when specifically authorized by the Legislature. See State v. Gonzalez, 123 N.J. 462, 464-65, 588 A.2d 816 (1991). However, defendant argues that when such an issue is presented, the court will reject the Hunter holding. Defendant relies on Churchdale Leasing, supra, 115 N.J. at 107, 557 A.2d 277 in which the Supreme Court held that in the statute under review there was no clear intent for the imposition of cumulative punishment but then added the following:
At some point, we may be obliged to reconcile the statement in Hunter that multiple punishment may be imposed if the Legislature clearly so intends with a conflicting proposition from our own cases. The conflicting proposition is that the Legislature would exceed its authority if in creating two offenses it simply applied different labels to the same offense. See State v. Davis, 68 N.J. 69, 80, 342 A.2d 841 (1975).
[115 N.J. at 107, 557 A.2d 277.]
Despite plaintiff's interpretation of the Court's dicta, absent specific direction or holding by our Supreme Court to the contrary, we consider Hunter to be applicable and hold that N.J.S.A. 2C:39-4.1(d) is constitutional under both the Federal and State Constitutions. The statute does not simply apply "different labels to the same offense," Churchdale Leasing, supra, 115 N.J. at 107, 557 A.2d 277. Rather, it recognizes that possession of a weapon, especially a firearm, in the drug trade presents a separate and extraordinary danger that warrants a separate and consecutive punishment. The legislative will is clear, and we are obliged to follow it.

V.
We remand for re-sentencing in light of State v. Natale II, 184 N.J. 458, 878 A.2d 724 (2005), because the judge imposed a sentence in excess of presumptive terms.
Affirmed in part. Reversed in part. Remanded for re-sentencing.
NOTES
[1] N.J.S.A. 2C:39-4.1(d) states: "[N]otwithstanding the provisions of N.J.S.A. 2C:1-8 [the general sentencing principle requiring merger] or any other provision of law, a conviction arising under [the firearms and dangerous weapons statute] shall not merge with a conviction for a violation of [the enumerated drug offenses] ... nor shall any conviction under these sections merge with a conviction under this sentence ... [T]he sentence imposed upon a violation of this section shall be ordered to be served consecutively to that imposed for any conviction for a violation of any of the [enumerated drug offenses]."