**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4111-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GARRY S. CARTER, a/k/a
GARRY CARTER, GARY S.
CARTER, GARY S. GEE,
GARRY SUTTON, GARY
G. SUTTON, GARY CARTER,
JR., and GARY CARTER,

    Defendant-Appellant.

_____

        Submitted May 5, 2026 – Decided June 3, 2026

        Before Judges Sumners and Chase.

        On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 22-12-3623.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (Ethan Kisch, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant Garry Carter appeals from his conviction and sentence, which followed a guilty plea, after the Law Division's denied his motion for a Franks[1] hearing. We affirm.

I.

We discern the following facts from the record. The Camden County Prosecutor's Office ("CCPO") was conducting a narcotics investigation into defendant and multiple co-conspirators. Pursuant to that investigation, various search warrants were sought by CCPO Detectives William Heron and Rodney Banks.

The first application, filed in January 2022, sought "a Communications Information Order under N.J.S.A. 2A:156A-29(e)" regarding multiple phone numbers. Specifically, the detectives sought telephone facility identification information and subscriber, billing, and customer records. To support the

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

application, the detectives certified and swore to the following facts: (1) Detective Heron was informed by multiple confidential sources that defendant was leading a narcotics distribution ring wherein multiple people distributed cocaine for him; (2) one of those sources, "PO#2009," advised that defendant "control[ed] the narcotics sales within Camden County"—this assertion was reiterated by a second confidential source, "PO#1937"; and (3) these confidential sources provided detectives with the phone numbers defendant used to coordinate with buyers.

Next, on January 24, 2022, the detectives filed a second application for the use of vehicle tracking devices. In support of the application, the detectives relied on the same facts as the previous application and additionally certified: (1) defendant was arrested for possession of a controlled dangerous substance ("CDS") and a prohibited weapon on September 11, 2021, while operating a "red 2011 Kia Sorento"; (2) during the week of November 28, 2021, Detective Heron "observed [defendant] operating the same red 2011 Kia Sorento"; (3) defendant was observed on multiple occasions operating Hertz rental vehicles rented by his co-conspirators; and (4) detectives personally observed defendant use certain counter-surveillance maneuvers which "limited" the usefulness of "physical and

3

visual surveillance." Accordingly, the detectives sought to track vehicles owned, operated, or rented by defendant and his co-conspirators.

On March 7, 2022, the detectives again applied for a search warrant seeking to search the contents of a United Parcel Service ("UPS") package. Although this application included many of the same facts asserted previously, the detectives further certified that: (1) on January 28, 2022, surveillance units followed defendant to an address in Clementon, where he was seen waiting, for six hours, to retrieve a package from a UPS driver; (2) detectives sent a subpoena to UPS regarding shipping information on the package delivered to the Clementon address; (3) on February 16, 2022, confidential informant "PO#1625," advised that defendant "had received a package from California which contained exotic marijuana"; (4) on March 3, 2022, global positioning systems ("GPS") tracking coordinates showed defendant was at a UPS store, which was consistent with behavior the detectives had observed on January 26 and 28, 2022; (5) the detectives confirmed that defendant was receiving packages from an individual in California named "Felicia Lee"; (6) on March 4, 2022, defendant was again at the Clementon address and detectives were notified by a UPS employee that a package was set to arrive at that address— thus, the detectives informed UPS that the package likely contained a CDS and

4

seized the package pending the search warrant application; and (7) a K9 sniff of the seized package indicated the presence of narcotics. This search warrant was approved on March 7, 2022, and the package was found to contain "three kilograms of cocaine."

On September 6, 2022, the detectives sought a fourth search warrant for the use of "wire, oral, and electronic, and remote video surveillance[.]" This application outlined controlled buys and surveillance conducted during the investigation into defendant. Further, it described defendant's frequent usage of UPS. Additionally, and most relevant to this appeal, the application's version of the events on March 4, 2022—where the UPS package was seized—vary to the extent that the prior application: (1) asserted detectives had knowledge of defendant's whereabouts via GPS tracking whereas this application asserts that officers observed defendant at the Clementon address; and (2) merely stated detectives were notified by UPS that a package was set to be delivered but this application clarified that detectives called UPS to advise them a package may be delivered, at which point UPS confirmed those suspicions.

Finally, on September 27, 2022, a search warrant application was filed "for use of a tracking device on a 2007 Nissan Sentra . . . operated by [defendant]." The application sought to renew the previously granted GPS

5

tracking warrant which was set to expire that day. Further, this application outlined that: (1) audio and video monitoring of defendant evidenced suspected narcotic transactions; (2) defendant was continuing to receive and ship packages of suspected CDS through UPS; and (3) there continued to be a pattern of defendant, and his co-conspirators, utilizing rental vehicles to obtain, transport, and distribute CDS.

Defendant and five co-defendants were subsequently indicted by a Camden County grand jury. Defendant was indicted on twenty-two counts: first-degree leading a narcotics trafficking network, N.J.S.A. 2C:35-3; first-degree maintaining or operating a CDS production facility, N.J.S.A. 2C:35-4; eight counts of third-degree possession of a CDS, N.J.S.A. 2C:35-10a(1); five counts of first-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(1); second-degree attempted possession of a CDS with intent to distribute, N.J.S.A. 2C:5-1, N.J.S.A. 2C:35-5a, and N.J.S.A. 2C:35-5b(1); two counts of second-degree conspiracy to possess a CDS with intent to distribute, N.J.S.A. 2C:5-2, N.J.S.A. 2C:35-5a(1), and N.J.S.A. 2C:35-5b(1); second-degree money laundering and financial facilitation, N.J.S.A. 2C:21-25a "and/or" N.J.S.A. 2C:21-25b; two counts of third degree possession with the intent to distribute cocaine, N.J.S.A. 2C:35-5(a)(1),

6

-5(b)(3); and third-degree conspiracy to possess cocaine with the intent to distribute, N.J.S.A. 2C:5-2, 5(a)(1).

Defendant filed a motion to suppress and requested a <u>Franks</u> hearing. Oral argument on defendant's motion was heard on March 28, 2024. Ultimately, the court found that defendant did not make a substantial showing of false statements as required by <u>Franks</u> and denied defendant's motion to suppress without an evidentiary hearing. The motion judge noted that "[t]here [had] been a lot of argument, but not evidence submitted by the defense in support of their arguments. There[] [were] no certification[s]. No affidavit, either." The judge also found it "[s]ignificant . . . that defendant [did] not argue that there [was] no probable cause for the issuance of the search warrant."

Thereafter, defendant accepted a plea agreement to plead guilty to four counts of first-degree possession of a CDS with intent to distribute and stipulated that he was extended term eligible. In exchange for defendant's guilty plea, the State agreed to: (1) dismiss the remaining counts; (2) seek a twenty-one-year sentence with seven years of parole ineligibility; (3) support concurrent sentencing on all counts; and (4) recommend a concurrent three-year sentence, for a third-degree drug charge in a separate indictment. After finding that

defendant had sixteen prior indictable convictions, the court sentenced defendant in accordance with the plea agreement.

This appeal follows. In his counseled brief, defendant raises the following argument:

POINT I

REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ERRED IN DENYING [DEFENDANT'S] MOTION FOR A FRANKS HEARING.

Defendant raises the following issues in his self-represented supplemental brief:

POINT I

REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A FRANKS HEARING[.]

POINT II

THE PROSECUTOR ABANDON[ED] HER ETHICAL AND CONSTITUTIONAL RESPONSIBILITIES. THE "FLAGRANT MISCONDUCT" WAS SO EGREGIOUS THAT IT DENIED THE DEFENDANT THE RIGHT TO A FAIR AND IMPARTIAL JUDICIAL PROCEEDING, BY ENGAGING IN FUNDAMENTALLY UNFAIR TACTICS IN THE PRESENTATION, WHICH THREATENED THE INTEGRITY OF THE PROCESS, AND RESULTING IN THE EXTREME INJUSTICE AND PREJUDICE TO THE DEFENDANT.

In a supplemental brief,[2] defendant's counsel argues the following point:

SUPPLEMENTAL POINT I

THE SENTENCE IMPOSED VIOLATES THE ATTORNEY GENERAL DIRECTIVE 2021-4 ELIMINATING MANDATORY MINIMUMS FOR NON-VIOLENT DRUG OFFENSES, AS WELL AS DUE PROCESS AND OUR SENTENCING CODE, REQUIRING A REMAND FOR RESENTENCING.

II.

Although we normally grant deference to the findings of fact made by a trial judge in connection with a motion to suppress, there was no evidentiary hearing in this case. State v. Elders, 192 N.J. 224, 243-44 (2007). Instead, the judge relied on the contents of the detectives' affidavits. A reviewing court "may only consider whether the motion to suppress was properly decided based on the evidence presented at that time." State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999) (quoting State v. Jordan, 115 N.J. Super. 73, 76 (App. Div. 1971), certif. denied, 59 N.J. 293, 281 (1971)).

"A trial court's interpretation of the law . . . and the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014) (citing State v. Gandhi, 201 N.J. 161, 176

---

[2] On May 4, 2026, we granted defendant's motion to supplement his brief concerning this limited issue and permitted the State time to reply.

A-4111-23

(2010); Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). A trial court's legal conclusions are reviewed de novo. Ibid. (citing Gandhi, 201 N.J. at 176).

We review a trial judge's ruling regarding the need for an evidentiary hearing for abuse of discretion. State v. Broom-Smith, 406 N.J. Super. 228, 239 (App. Div. 2009). An abuse of discretion occurs when a court's "decision [is] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." U.S. v. Scurry, 193 N.J. 492, 504 (2008) (quoting Flagg v. Essex County Prosecutor, 171 N.J. 561, 571 (2002)).

A reviewing court gives substantial deference to a judge's determination that probable cause existed to issue a search warrant. State v. Mosner, 407 N.J. Super. 40, 61 (App. Div. 2009). "A search warrant is presumed to be valid, and defendant bears the burden of demonstrating that the warrant was issued without probable cause[.]" Ibid. (quoting State v. Evers, 175 N.J. 355, 381 (2003)) (alteration in original). Probable cause may be based upon information received from informants, so long as there is "substantial evidence in the record to support the informant's statements." State v. Keyes, 184 N.J. 541, 555 (2005). "Doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Id. at 554 (quoting State v. Jones, 179 N.J. 377, 389 (2004)).

In Franks, the United States Supreme Court held:

> [A]s a matter of federal constitutional law that where a defendant makes a substantial preliminary showing of material misstatements in a search warrant affidavit, made knowingly or with reckless disregard for the truth, he must be afforded an opportunity to inquire further into the veracity of the affidavit. If at such inquiry the defendant proves such falsity by a preponderance of the evidence, the warrant is invalid and the evidence seized thereby must be suppressed.
>
> [State v. Howery, 80 N.J. 563, 566 (1979) (citing Franks, 438 U.S. at 155).]

In Howery, the New Jersey Supreme Court adopted Franks and held that a defendant challenging the veracity of a search warrant must: (1) "make a 'substantial preliminary showing' of falsity in the warrant[,]" id. at 567 (quoting Franks, 438 U.S. at 681); (2) "allege 'deliberate falsehood or reckless disregard for the truth" and prove those allegations, by a preponderance of the evidence, via reliable statements of witnesses, id. at 567-68 (quoting Franks, 438 U.S. at 171); and (3) show that the alleged misstatements are material—i.e., "when they are excised from the affidavit, that document no longer contains the facts sufficient to establish probable cause," id. at 568 (citing Franks, 438 U.S. at 171); see also State v. Desir, 245 N.J. 179, 196 (2021) (outlining a defendant's burden under Franks).

11

Where a defendant levies a challenge to a search warrant, the court "must look to the four corners of the affidavit giving rise to its issuance." State v. Dispoto, 383 N.J. Super. 205, 216 (App. Div. 2006) (citing State v. Novembrino, 105 N.J. 95, 121 (1987)). Importantly, to obtain a Franks hearing, a defendant's allegations should be supported by affidavits or other reliable statements. See State v. Sheehan, 217 N.J. Super. 20, 25 (App. Div. 1987) (requiring allegations be supported by "an offer of proof"). Thus, mere "'[a]llegations of negligence or innocent mistake[s]'" and minor technical problems are insufficient to necessitate a Franks hearing. Broom-Smith, 406 N.J. Super. at 240-41 (quoting Franks, 438 U.S. at 171); see also State v. Martinez, 387 N.J. Super. 129, 141 (App. Div. 2006) ("a good faith mistake is insufficient to strike down [a] warrant." (first citing Franks, 438 U.S. at 171 and then citing State v. Marshall, 148 N.J. 89, 193, cert. denied, 522 U.S. 850 (1997))). Further, "defendant's burden . . . is high[.]" Desir, 245 N.J. at 198.

Defendant alleges five discrepancies and omissions he believes entitle him to a Franks hearing whether: (1) on March 4, 2022, defendant's whereabouts were ascertained by GPS coordinate tracking or by personal observation of officers; (2) on March 4, 2022, UPS contacted police or if police contacted UPS; (3) confidential informants, specifically "PO#2009," stated that unnamed

individuals worked for defendant or if they provided specific names; (4) confidential informants, specifically "PO#1937," told police that defendant was a narcotics distributor or told police that defendant received packages from California containing cocaine; and (5) the investigation into defendant began in January or November, 2021.

Preliminarily, as the trial court noted, defendant has not argued that if the alleged discrepancies were excised from the warrants that there was no probable cause for the issuance of the search warrant. Additionally, defendant has not presented any affidavits or evidence in support of his arguments. With that in mind, we address each of defendant's five assertions in turn.

First, defendant's argument regarding whether police observed or tracked him on March 4, 2022, are unpersuasive. Indeed, there are differences in the facts between two of the warrant applications—the March 7, 2022, application certifies "GPS coordinates showed [defendant] sitting at" the Clementon address, whereas the September 6, 2022, application certifies "Sergeant Morgan observed [defendant] sitting . . . at" the Clementon address. Although these are differences, they are not in conflict with each other. The record makes clear that detectives were both tracking defendant via GPS and physically surveilling him.

Moreover, this does not negate probable cause or establish a knowing, intentional, or reckless disregard for the truth. Whether the facts of March 4, 2022, were pursuant to GPS tracking or physical observation is irrelevant to probable cause. Instead, what is notable is that: (1) detectives had knowledge of defendant's whereabouts and knew he was at a location where he previously received suspected CDS; (2) indeed, there was a package scheduled to be delivered on March 4, 2022, to defendant's location; (3) that package was intercepted by detectives and, after being inspected by a K9 officer, was determined to contain narcotics; and (4) when the application to search the package was approved, the package was found to contain three kilograms of cocaine. Accordingly, this is, at most, a minor technical problem that does not dispel probable cause.

Second, defendant's contention that there is a discrepancy regarding discussions with the UPS employee is not only belied by the record but is expressly incorrect. The record reveals the detectives never asserted that UPS called them. Instead, Detectives certified that a UPS employee "notified" them. In a later application, it's clarified that "Detective Banks contacted UPS and advised . . . that police believed a package possibly containing illegal contraband may be delivered."

A-4111-23

Taken together, the record clarifies that police knew defendant was at the Clementon address. Police further knew that defendant received UPS packages at that address and detectives contacted UPS to inform them that a package of narcotics may be delivered. UPS notified the detectives that indeed, a package was set to be delivered. Not only does no discrepancy exist regarding this issue, but also defendant makes no evidentiary showing to counter the facts establishing probable cause.

Third, there are no discrepancies regarding the information received from confidential informants. Although there are additional facts in subsequent warrant applications that were not included previously, this is insufficient to necessitate a Franks hearing.

Defendant highlights that the first warrant application merely states: "[Defendant] has several males who distribute cocaine for him." Later applications state: "[Defendant] has several males, including Stevie 'Styx' Neal and Orlando 'O' Wallace, who distribute crack cocaine for him within Camden County." Important, is that these applications, though they contained slightly different information, sought different types of search warrants. The first, where names of co-conspirators were omitted, sought to track defendant's personal phone numbers. Accordingly, the names of his co-conspirators were irrelevant

15

to probable cause. The second application, where names were included, sought audio and video surveillance of defendant and his co-conspirators. Thus, the names of the co-conspirators were relevant to probable cause.

Fourth, defendant's assertion regarding confidential informant "PO#1937's" statements are equally unavailing. Indeed, "PO#1937" did make two separate assertions; first, that defendant purchases cocaine from "Elijah Byers", and second, that defendant has a "drug connect" in California that ships him packages of narcotics. There is no reason to believe that these assertions cannot both be true. Further, defendant has offered no evidence to undermine either assertion. Instead, detectives included information about a connection in California as defendant's usage of UPS became more prevalent. Additionally, the detectives' investigation confirmed that defendant was both working in conjunction with Elijah Byers and receiving packages of narcotics through UPS.

Fifth, and finally, the language of the warrant applications entirely undermines defendant's assertion that the detectives misstated the timeline of the investigation. In the first application, the detectives certified that Detective Heron "debriefed" confidential sources between January 2021 and January 2022. This does not necessarily imply that an investigation into defendant began in January 2021—conversely, it shows that Detective Heron spoke with

16

confidential sources during that time and defendant's name was brought up. In later applications, the Detectives certified that the current investigation into defendant began in November 2021. Again, defendant has offered no evidence to undermine the implication that both statements are true. The record shows that between January 2021 and January 2022 confidential sources—who likely were disclosing a litany of information not entirely specific to defendant—informed detectives of defendant's standing in the Camden County narcotics trade. Thereafter, beginning in November 2021, the CCPO opened a formal investigation into defendant. This is not a knowing, intentional, or reckless disregard for the truth.

In defendant's self-represented submission, he alleges that the prosecutor committed a <u>Brady</u>[3] violation. Essentially, defendant asserts that because the prosecutor had knowledge of the falsities contained in the warrant applications, that perjury and false swearing occurred when the prosecutor offered submissions to the court. Defendant's assertions in this regard are entirely premised on a <u>Franks</u> violation. Since we have determined there was no violation, this argument is without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

---

[3] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

A-4111-23

## III.

Lastly, defendant challenges his sentence. First, he contends the prosecutor did not follow Attorney General Directive No. 2021-4, Directive Revising Statewide Guidelines Concerning the Waiver of Mandatory Minimum Sentences in Non-Violent Drug Cases Pursuant to N.J.S.A. 2C:35-12. (Apr. 19, 2021), in fashioning his plea offer. Second, he asserts he should have been given a sentence with no parole ineligibility. We disagree.

An appellate court's standard of review of sentences is well-established and deferential. State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)). We will affirm a trial court's sentences unless: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record'; or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

Defendant's sentence did not violate the directive. The directive does not mandate a waiver of mandatory minimum sentences or prohibit the State from seeking an extended term under N.J.S.A. 2C:35-12. Moreover, the directive

18

does not control a trial judge's discretion to impose a period of parole ineligibility, pursuant to N.J.S.A. 2C:43-6(b).

Defendant's assertion that he needs to be resentenced because the discretionary period of parole ineligibility was not reduced by commutation credits, minimum custody credits, or work credits is also without merit. Pursuant to N.J.S.A. 30:4-123.51(a), those credits do not reduce a period of parole ineligibility, whether mandatory or discretionary.

The court found, and defendant does not challenge, that aggravating factors three ("risk of reoffending"), six ("prior criminal record and the seriousness of [current] offenses"), and nine ("need for deterring the defendant and others from violating the law") applied to him. Defendant also does not challenge that the court found no mitigating factors. The court's finding that the aggravating factors outweighed the complete absence of any mitigating factors—on both qualitative and quantitative grounds—was the functional equivalent to a finding that aggravating factors substantially outweighed the mitigating factors.

Defendant also argues that he should have received a sentence with no parole ineligibility. This contention is belied by the record. Defendant had eighteen prior indictable convictions and was eligible for both a mandatory and

discretionary extended term. In fact, as part of his plea he stipulated that he was a persistent offender. Defendant was also facing first-degree charges for leading a narcotics trafficking network and for maintaining or operating a CDS production facility. His plea agreement and corresponding sentence with a one-third parole disqualifier complies with N.J.S.A. 2C:43-6(f). The sentence does not shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-4111-23